|2LeBLANC, Judge.
In this ongoing custody/visitation litigation, the former stepgrandmother, D’Ann Dunham Henry, of a six year old child was denied visitation rights ■ and appeals. This matter was previously before us on appeal of the dismissal of the stepgrandmother’s rule for visitation. In that appeal, we reversed the granting of the exceptions of no cause and no right of action and remanded the matter for further proceedings on the merits. Henry v. Henry, 95-0712 (La.App. 1st Cir. 11/9/95); 665 So.2d 87. In that decision, we held the stepgrandmother had a right to bring an action for visitation pursuant to La.C.C. art. 136(B), but cautioned that “in order to prevail[,] she must establish extraordinary circumstances which compel such an order in accordance with Article 136 and the factors enumerated therein regarding best interest of the child.” (emphasis in original) Henry, 95-0712 at p. 3-4; 665 So.2d at 88. (Since that decision, a divorce became final, and the mover is now a former stepgrandparent.) The primary issue on appeal before us is *795 whether the trial court erred in granting a motion for involuntary dismissal at the close of mover’s case and in finding the stepgrand-mother failed in her burden of proving extraordinary circumstances required by law for eligibility for visitation rights by a former stepgrandparent.
BACKGROUND
We borrow from our earlier opinion:
The subject of this proceeding, Devon Ray Henry, bom April 2, 1990, is the natural child of Stacey Lynn Henry (now Simmons), - This matter was commenced when Stacey Lynn Henry (now Simmons), [sic] filed a petition seeking custody of her child from the child’s maternal grandfather [Stacey’s father], John Edgar Henry. As alleged, the child had lived with Mr. Henry [and Mr. Henry’s wife, D’Ann Dunham Henry] for approximately a year with the permission of the mother, Stacey Lynn Henry (now Simmons). When Ms. Simmons sought the child’s return prior to filing suit, Mr. Henry apparently refused. The dispute between Ms. Simmons and Mr. Henry was resolved when custody of the child was returned to Ms. Simmons and a judgment was rendered giving Mr. Henry generous visitation rights.
Thereafter, D’Ann Dunham Henry, Ms. Simmons’ stepmother and Mr. Henry’s wife since 1989, filed the instant “Rule to Establish Visitation Rights” seeking visitation rights with the child. In response, Ms. Simmons filed an exception pleading the objections of no right and no cause of action, arguing that since divorce proceedings are currently underway between Mr. and Mrs. Henry, Mrs. Henry is not eligible, under La.C.C. art. 136(B.), as a relative by “affinity”, for visitation.
Henry v. Henry, 95-0712 at p. 2; 665 So.2d at 87. We reversed the granting of the exceptions on the basis that, although Mrs. Henry had filed for divorce, that action was pending at the time of the hearing on the exceptions. Thus, Mrs. Henry was still a relative by affinity of both Ms. Simmons and the child, entitling her to claim visitation pursuant to the La.C.C. art. 136(B), which at the time provided for visitation rights for relatives “by blood or affinity”. Since that time, Mrs. Henry’s petition was granted and the divorce ^between her and Mr. Henry became final. Consequently, D’Ann Dun-ham’s present status vis-a-vis the child is former stepgrandmother.
La.C.C. art. 136(B) was amended by La. Acts 1995, No. 57, effective August 15, 1995, to extend the entitlement of visitation rights to former stepparents and former stepgrand-parents. The statute now provides:
Under extraordinary circumstances, a relative by blood or affinity, or a former stepparent or stepgrandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall consider:
(1) The length and quality of the prior relationship between the child and the relative.
(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.
(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.
(5) The mental and physical health of the child and the relative.
Thus, D’Ann Dunham still has a right to maintain an action for visitation pursuant to La.C.C. art. 136(B).
In applying the foregoing statute, our jurisprudence has yielded two fundamental rules in resolving child visitation issues: (1) the paramount consideration in determining visitation rights is the best interest of the child; and (2) in judging each case on its own facts and circumstances, the trial court has great discretion, and its determinations will not be disturbed absent manifest error. Hawthorne v. Hawthorne, 96-89, p. 22 (La. App. 3rd Cir. 5/22/96); 676 So.2d 619, 630; writ denied, 96-1650 (La.10/25/96); 681 So.2d 365; In the Interest of Baron, 95-1102, p. 5 (La.App. 3rd Cir. 1/31/96); 670 So.2d 357, *796 360; Pendergrass v. Pendergrass, 94-1629, 94-1165, p. 6 (La.App. 4th Cir. 1/26/96); 667 So.2d 1213, 1216-17, writ denied, 96-0719, (La.4/26/96); 672 So.2d 908.
ANALYSIS
The initial inquiry, which must be answered in the affirmative in order for a non-parent to become eligible for consideration for visitation rights pursuant to La.C.C. art. 136(B), is whether extraordinary circumstances exist. Then, and only then, is an analysis of the five factors listed in the statute warranted and proper, to determine if visitation is in the best interest of the child. The trial court in this matter analyzed the evidence presented; explicitly considering the five factors listed in the statute and reached the conclusion that Ms. Dunham had failed to establish the existence of extraordinary circumstances. The trial court erred in considering the five factors absent a finding of extraordinary circumstances. Nevertheless, our review of the record reveals the existence of extraordinary circumstances, thus, an analysis of the five factors is warranted to determine the best interest of the child.
UExtraordinary Circumstances
In April, 1990, Stacey Henry, an unwed teenager, gave birth to the child who is the subject of claimed visitation. Stacey’s father, John Henry, and his wife at the time, D’Ann Dunham Henry, were present at the birth and enjoyed a continued presence in the child’s life until the inception of this litigation. In December, 1992, Stacey and her child, who was just short of three years old at the time, moved into the home of John and D’Ann Henry, Stacey’s father and stepmother. Approximately six months later, Stacey moved into one of her father’s rental houses located down the street until she was evicted by her father a few months later. Throughout this entire time, the child lived primarily with John and D’Ann Henry, who were largely responsible for his care and rearing. The record established that during the time the child lived with the Henry’s, D’Ann Henry potty trained him, “bathed him, fed him, dressed him, clothed him, played with him, took him to the doctor, took him to the dentist, would call for his friends and have them spend the night, called his grandmother [Stacey’s biological' mother] when he missed [her],” etc. Although the child’s mother participated, sporadically, in these child-rearing activities, D’Ann was essentially the primary caregiver during the time the child lived with her and her husband.
After she was evicted from the rental house, Stacey left the child with the Henrys and was gone for approximately six weeks before anyone knew of her whereabouts. In August, 1993, she filed a Petition for Custody of her child, naming her father as the defendant. That litigation resulted in a court order granting Mr. Henry generous visitation rights with his grandson, and ultimately, a judgment awarding Stacey sole custody. Thus, by virtue of Mr. Henry’s visitation rights, Mrs. Henry’s contact with the child continued.
D’Ann Henry’s relationship with the child was interrupted in August, 1994, when she and her husband separated. In September, 1994, D’Ann Henry filed for a divorce from John Henry, and in October, 1994, she asserted her rights for visitation with the child. We find these circumstances, in which a step-grandparent, related to the child only through marriage to the child’s grandfather, has willingly accepted and fulfilled the role as primary caregiver of a two year old child, including the many attendant child-rearing and financial responsibilities, particularly in light of the sporadic, indefinite absences of the child’s biological mother, to be extraordinary. See Ray v. Ray, 94-1478 (La.App. 3rd Cir. 5/3/95), 657 So.2d 171; where visitation rights were granted to a great-grandfather and paternal aunt based on the court’s finding that the death of a child’s father, the absence of a paternal grandfather, and the fact that the child lived for a period of time with his paternal great-grandfather and aunt presented extraordinary circumstances within the scope of art. 136(B).
IsBest Interest of the Child
Having found extraordinary circumstances, we turn now to an- analysis of the five factors and determine whether visitation rights with D’Ann Dunham are in the best *797 interest of Stacey’s child. (We note that our review of the record is without the benefit of evidence provided by the defendants-in-rule; the evidence is limited to that presented in mover’s case-in-chief, as the judgment was rendered against her on a motion for involuntary dismissal.)
The first factor, the length and quality of the prior relationship between the child and the relative, is clearly established by the record. It is undisputed that during the time the child lived with the Henrys with Stacey’s consent, the Henrys provided stability, financial support and a good home for the child, as well as for Stacey, when she chose to stay there. Furthermore, it is not disputed that the child and his stepgrandmother had a positive bond since his birth and continuing until the inception of this litigation. Stacey testified that D’Ann Dunham was a good grandmother and a positive influence on the child. It is undisputed that the child loved D’Ann very much and that they had a healthy relationship. Thus, the record supports the trial court’s conclusion regarding this factor, that “there was a good, close and loving relationship between Ms. Dunham and the child in the child’s early years.”
In analyzing the second factor, whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative, the trial court concluded, “the evidence does not show that there is anything that the child needs that cannot be provided by [the] mother, the mother[’]s extended family, and all the other parties that are involved in the child’s life.” The record reflects that D’Ann Dunham provided guidance, enlightenment, and tutelage together with the sundry other benefits bestowed on the child during the years they enjoyed a relationship. There is evidence that D’Ann Dunham enrolled in and attended parenting classes for children and sought family counseling for input in parenting the child. The record also contains evidence that D’Ann Dunham took an active role and participated in the child’s preschool and extracurricular activities. While they were married, the Henrys took the child on vacations to the beach and snow skiing. According to Ms. Dunham, she is the only source of stability in the child’s life, and she wants to continue to provide him with a secure and consistent environment. Notwithstanding the foregoing, the inquiry is whether the child is in need of those things at the time visitation is sought, and whether the relative seeking visitation is one who can best provide them.
The record reflects that Stacey, the child’s mother, has remarried and has two other children with her new .husband, whom the child at issue refers to as “dad”. Furthermore, Stacey’s biological mother is an active grandmother in the child’s life. The child has ^maintained a relationship with his maternal grandfather (John Henry) and has “gained” a paternal grandmother and grandfather (his new stepfather’s parents.) Thus, although undeniably D’Ann Dunham has generously provided for the child and nurtured him since his birth, the record does not reveal any needs by the child that are not being met, or any needs that only D’Ann Dunham can meet.
The third factor, the preference of the child, was found by the trial court to be inapplicable to this case; due to the young age of the child at issue, we agree. The fourth factor, the willingness of the relative to encourage a close relationship between the child and his parent or parents, is the most problematic factor in light of the facts of this case. The trial court’s only comment regarding this factor was, “there is [sic] some problems and animosity between the mother of the child and the mover in this case.” Prior to her divorce from John Henry, D’Ann Dun-ham enjoyed an amicable relationship with Stacey, and her active involvement in the child’s life was welcomed by Stacey. In addition to caring for the child, D’Ann Dunham provided assistance and guidance to Stacey, who was a young unwed mother. According to D’Ann, she tried to treat and care for Stacey in much the same way as a mother would. However, after D’Ann’s divorce from John Henry, certain events occurred which caused D’Ann and Stacey’s relationship to deteriorate rapidly, culminating in Stacey’s refusal to allow visitation between the child and D’Ann. The record reveals that in September, 1994, D’Ann Dunham hired a private investigator to perform a background cheek *798 on Stephen Simmons (Stacey's boyfriend at that time, to whom she is presently married). The investigation yielded some information which prompted D’Ann to summons the police; Stephen Simmons was ultimately arrested on outstanding drug charges. According to D’Ann, she had some concerns about Mr. Simmons and his influence on the child which led her to investigate; however, she admitted that she did not share her concerns or her actions with Stacey until after Mr. Simmons had been arrested. Stacey testified that she considered D’Ann’s actions an unwanted interference with her relationship with Mr. Simmons which created problems for her and the child, who was aware of and upset about his step-father’s arrest. The record reveals other problems between D’Ann and Stacey concerning D’Ann’s activities with the child of which Stacey openly disapproved and to which she did not consent, particularly D’Ann’s portrayal of herself to the public as the child’s mother. D’Ann’s high school reunion booklet contains biographical information provided by D’Ann which indicates that she is the mother of the child. Additionally, the record contains an application for enrollment to a local private school in which John and D’Ann Henry are listed as the child’s father and mother, respectively. Further, Stacey testified to other objections régarding D’Ann’s conduct with the child, particularly her taking the child to social workers and to a Catholic church without Stacey’s consent. Stacey testified, and D’Ann did not deny, 17that the child was aware of the litigation involving D’Ann’s visitation with him because D’Ann had told him about it. Also, at trial, evidence was elicited that D’Ann Dunham smokes marijuana at least “occasionally”, and that both she and Mr. Henry had done so in the presence of the child. Finally, Stacey testified that after all the foregoing events, she did not feel that D’Ann would encourage a close and healthy relationship between her son and her.
The last factor for consideration in determining the best interest of the child is the health of the child and the relative, both mentally and physically. The trial court noted that although the mental health of the child had been eluded to, “there was no evidence that the child was having any anxiety or psychological problems” either as an incident of his relationship with D’Ann or as a result of his discontinued visitation with her. Likewise, the trial court found no “mental or physical problems with the mover [D’Ann] in this case.” The record reveals no physical health problems whatsoever with the child and/or D’Ann. Further, although both sides attempted to show some mental health issues relating to both the child and D’Ann, we find no error in the trial court’s conclusions that these did not constitute “problems” such that the best interest of the child had been, or would be, affected.
Having considered the foregoing factors, we find no error in the trial court judgment denying D’Ann Dunham visitation rights with this child. It is undeniable that D’Ann played a very significant role in the child’s early life, particularly between the age of two and three, when he lived with her and her husband. Her willingness to raise and nurture her step grandchild during a time when the child’s mother was incapable of providing the best for him was very generous and commendable. However, the record reveals that circumstances have changed; the child’s mother’s life has stabilized and the child has a strong family unit; his needs are being met despite D’Ann’s absence; the child has adapted to the changes and there is no observable detriment occasioned by the absence of D’Ann in his life. Most significantly, the relationship between D’Ann and Stacey has deteriorated to such an extreme that it is no longer in the best interest of the child to continue a relationship with D’Ann. Indeed, we note the deterioration of her relationship with the child’s mother is the direct result of D’Ann’s own actions, absent which she would not be in the position she is in. Therefore, we find no error in the trial court judgment denying D’Ann Dunham visitation rights.
DISMISSAL OF JOHN EDGAR HENRY
Ms. Dunham also contends on appeal that the trial court erred in denying a motion to dismiss John Henry as a defendant to these proceedings. Assuming for the sake of argument that John Henry was not a proper *799 party defendant (which issue we expressly do not reach) appellant has not shown, nor do we find, any adverse consequences or prejudice to the case |»by Mr. Henry remaining a named party defendant. Consequently, this is a non-issue which we need not address.
ADMISSIBILITY OF COMMUNICATIONS WITH SOCIAL WORKER
Finally, D’Ann Dunham asserts the trial court erred in ruling that communications had by the child, Stacey, and John Henry with a board certified social worker were privileged, and thereby, inadmissible at trial, absent a waiver. Susan Herrod, a Board Certified Social Worker, was called as an expert witness by D’Ann Dunham. Ms. Her-rod, who had seen D’Ann as a patient, testified that she was unaware of any mental health problem that would prevent D’Ann Dunham from having a healthy relationship with the child. She also testified regarding her observations of D’Ann and the child’s relationship, which she described as “playfulness, affections, comfort, neutering[sic], appropriate parent-child behaviors[.]” However, questions to Ms. Herrod regarding her visits with Stacey and John Henry, as well as those relating directly to anything elicited from the child as a patient were met with an objection and assertion of privileged communications, which were sustained by the trial court.
The pertinent statute is La.C.E. art. 510 B., which provides in pertinent part:
(1) General rule of privilege in civil proceedings. In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself ... his health care provider, or their representatives.
(2) Exceptions. There is no privilege under this Article in a non-criminal proceeding as to a communication:
[[Image here]]
(d) When the communication relates to the health condition of a patient when the patient is a party to a proceeding for custody or visitation of a child and the condition has a substantial bearing on the fitness of the person claiming custody or visitation, or when the patient is a child who is the subject of a custody or visitation proceeding, (emphasis added).
We note at the outset that the statutory exception pertains to the communications of a patient, and to the condition or fitness of a person claiming custody or visitation. The person claiming visitation in this matter is D’Ann Dunham; therefore, communications she had with Ms. Herrod which bear on her mental fitness are exceptions to the privilege. However, the exception is inapplicable to Stacey and to John Henry who are not claiming visitation; the privilege attaches to them, and since they did not waive it, testimony relating to Ms. Herrod’s communications with them was properly ruled inadmissible. Further, although the child is the subject of these proceedings, the evidence failed to establish that the child was seen by Ms. Her-rod as a patient. In fact, the record reveals that D’Ann Dunham took the child with her to the social worker without obtaining the consent of the child’s mother. Furthermore, Ms. Herrod testified that she did not see the child as a patient and that he did I snot have an appointment with her; she saw him when he accompanied D’Ann on her appointments with Ms. Herrod. We note that the trial court allowed her to testify regarding her general observations of the child as he related to D’Ann. All other communications, subject to the privilege for which a waiver had not been obtained, were properly disallowed as privileged communications.
Having found no error below, and that continued visitation with D’Ann Dunham is not in the best interest of the child at issue, we affirm the judgment of the trial court denying Ms. Dunham’s claim. All costs of this appeal are to be assessed to D’Ann Dunham.
AFFIRMED.