795 So.2d 350 (2001)
Mark GALJOUR and Mary Juanita Daigle Galjour
v.
Jeffrey Alan HARRIS
No. 2000 CU 2696.
Court of Appeal of Louisiana, First Circuit.
March 28, 2001.
Writ Denied June 1, 2001.
*351 Paula A. Perrone, Metairie, David S. Cressy, Mandeville, for Plaintiffs-Appellants Mark, Juanita, Gaston & Pat Galjour.
Harry P. Pastuszek, Jr., Mandeville, for Defendant-Appellant Jeffrey Harris.
Before: GONZALES, FOGG, and PETTIGREW, JJ.
PETTIGREW, J.
This case involves issues related to visitation and custody of a minor child. A dispute arose between the father of the child and the brother and sister-in-law of the child's deceased mother. Subsequently, the maternal grandparents intervened. Following the trial court's judgment as to visitation, all sides have appealed.

FACTS
Jeffrey Alan Harris ("Jeffrey"), defendant herein and a resident of St. Tammany Parish, is the father and natural tutor of the minor child, Camille Megan Harris ("Camille"), born April 2, 1996. Camille's mother, Tricia Galjour Harris ("Tricia"), died on April 23, 1997, from the effects of an inoperable brain tumor.
*352 Immediately following Tricia's death, her brother, Mark Galjour, and his wife, Mary Juanita Daigle Galjour ("Mark and Juanita"), who are residents of Jefferson Parish, instituted the instant action seeking issuance of an emergency ex parte order granting them full custody of Camille pending further orders from the court. Additionally, Mark and Juanita sought issuance of a temporary restraining order and prayed for further injunctive relief.
Evidently, in the months prior to her death, Tricia had instituted a divorce and child custody action entitled Tricia Galjour Harris v. Jeffrey Alan Harris, # 97-11531, 22nd JDC, Division B. Purportedly, on April 4, 1997, Tricia had been granted sole custody of Camille and exclusive use and occupancy of the family home pending further orders of the court. In connection therewith, Tricia and Jeffrey were scheduled to appear before the court's social worker for a child custody mediation on May 6, 1997, to be followed by a court appearance on May 13, 1997. Due to Tricia's untimely death, Mark and Juanita, as part of their rule, asked that the scheduled hearing dates be maintained, and requested permission to appear in her stead.
The trial court denied Mark and Juanita's request for sole custody and injunctive relief, but maintained the scheduled hearing dates substituting Mark and Juanita in the place of Tricia. The trial court further granted Jeffrey temporary custody of Camille.
Later, on November 3, 1997, the parties entered into a consent judgment. Pursuant to the terms thereof, Jeffrey was granted custody of Camille subject to specific visitation privileges granted to Mark and Juanita. Said visitation consisted of one consecutive week of visitation each month as long as Jeffrey continued to work offshore in excess of seven calendar days per month. In the event Jeffrey modified his work schedule and worked one week or less offshore, then, Mark and Juanita would have visitation with Camille for seven days out of every month although not necessarily consecutive and not necessarily overnight.
Jeffrey stopped working offshore, and retired from all employment outside of the home in December 1998. On September 27, 1999, Jeffrey filed a rule to terminate Mark and Juanita's visitation rights with Camille and alleged therein that Mark and Juanita were attempting to serve as "surrogate parents" to Camille. In connection therewith, the parties were scheduled to appear before the court's social worker for a mediation of the issues relating to custody and visitation on November 8, 1999, to be followed by a court appearance on November 24, 1999. Mark and Juanita responded by filing a rule for contempt, together with a rule for change of custody and for court-appointed evaluation. These matters were also set to be heard November 24, 1999.
At the November 24, 1999 hearing, the trial court issued an interim judgment that suspended the visitation rights of Mark and Juanita until further orders of the court. The court's judgment recommended however that Jeffrey voluntarily permit Mark and Juanita to "see" Camille. From this judgment, Mark and Juanita filed a motion for a new trial, and a hearing was set for January 6, 2000.
On January 6, 2000, a hearing was held, and a joint agreement was reached between the parties. The agreement, dictated into the record, provided that Jeffrey would participate in a visitation plan to be worked out with Camille's maternal grandparents, Gaston and Pat Galjour ("Mr. and Mrs. Galjour"). Through a motion filed on January 25, 2000, Mr. and Mrs. Galjour intervened and asserted a statutory right *353 to visitation pursuant to La. R.S. 9:344. A status conference originally scheduled for February 23, 2000, was rescheduled for March 13, 2000.
On March 8, 2000, Jeffrey filed several exceptions: namely, a peremptory exception raising the objection of no right of action as to Mark and Juanita, and a peremptory exception questioning the constitutionality of La. R.S. 9:344. Accordingly, the trial court postponed the March 13, 2000 hearing until April 12, 2000.
On April 12, 2000, a hearing was held on the various rules and motions filed by the parties. In a judgment signed July 21, 2000, the trial court maintained the peremptory exception filed by Jeffrey as to Mark and Juanita. The court's judgment specifically stated that "Mark and ... Juanita... [have] no right of action to pursue the visitation under state law [and] no change of circumstances to modify custody." The trial court further terminated any and all visitation previously exercised by Mark and Juanita and dismissed them as parties to this proceeding.
Additionally, the trial court granted Mr. and Mrs. Galjour's motion to intervene as plaintiffs and denied Jeffrey's exception challenging the constitutionality of La. R.S. 9:344. Pursuant to La. R.S. 9:344A, the trial court granted Mr. and Mrs. Galjour visitation with Camille on every third weekend subject to certain restrictions. The trial court also granted Mr. and Mrs. Galjour an additional one week (seven consecutive days) visitation during each year.
From this judgment, all parties have appealed.

ASSIGNMENTS OF ERROR
On appeal, Mr. and Mrs. Galjour join Mark and Juanita, in assigning the following specifications of error for review by this court:
1. The trial erred in finding that the cross-appellants, the maternal aunt and uncle, Mark Galjour and Mary Juanita Daigle Galjour, had no right of action to enforce existing visitation rights with the minor child, Camille, or to seek contempt for denial of said visitation or to bring a custody action.
2. The trial court erred in terminating the visitation rights granted by consent judgment unto the maternal aunt and uncle, Mark Galjour and Mary Juanita Daigle Galjour[,] without appointing a mental health professional and without conducting any hearing.
3. The trial court erred in imposing conditions upon Pat Galjour and Gaston Galjour with respect to their grandparent visitation rights without such conditions being recommended by any mental health professional.
Jeffrey has also appealed and assigns the following errors for review by this court:
1. The trial court erred in failing to maintain the exception of lack of constitutionality as to Louisiana Revised Statutes Title 9, Section 344A, both on its face and as applied in the instant case as an impermissible infringement upon the liberty interest of privacy of a parent.
2. The trial court erred in granting the grandparents visitation with the minor child, Camille Harris, without giving any special weight to the Father's determination of what is in his child's best interest.
3. The trial court erred in not compelling the grandparents to allege and prove the unfitness of the Father as a prerequisite to granting them visitation.

STANDARD OF REVIEW
Every child custody case must be viewed within its own peculiar set of facts. *354 Connelly v. Connelly, 94-0527, p. 4 (La. App. 1 Cir. 10/7/94), 644 So.2d 789, 793. The trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Thompson v. Thompson, 532 So.2d 101, 101 (La.1988)(per curiam); Bercegeay v. Bercegeay, 96-0516, p. 5 (La.App. 1 Cir. 2/14/97), 689 So.2d 674, 676.
In the instant case, as in most custody cases, the trial court's determination was based heavily on factual findings. As an appellate court, we cannot set aside the trial court's factual findings unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel its own evaluations and inferences are as reasonable. Id.

ANALYSIS
The legal authority relied upon by the parties for the disposition of this matter, includes La. Civ.Code art. 136 and La. R.S. 9:344.
Louisiana Civil Code article 136 provides, in pertinent part:
B. Under extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or stepgrandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall consider:
(1) The length and quality of the prior relationship between the child and the relative.
(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.
(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.
(5) The mental and physical health of the child and the relative.
C. In the event of a conflict between this Article and R.S. 9:344 or 345, the provisions of the statute shall supercede those of this Article.
Additionally, La. R.S. 9:344 provides, in pertinent part:
A. If one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage, the parents of the deceased, interdicted, or incarcerated party without custody of such minor child or children may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such *355 visitation rights would be in the best interest of the child or children.
At the outset, we note that Article 136 is located in "Title VDivorce" of the Civil Code. Specifically, the article is found in Chapter 2 of Title V, which addresses "Provisional and Incidental Proceedings." Therefore, it is clear that Article 136 contemplates a grant of reasonable visitation to relatives upon the parents' divorce, if there are extraordinary circumstances and upon a finding by the court that such an award is in the best interest of the child. See Vincent v. Vincent, 98-1346, p. 4 (La. App. 1 Cir. 6/25/99), 739 So.2d 920, 922.
Thus, in an action under Article 136, a relative, by either blood or affinity, bears the dual burden of showing not only extraordinary circumstances that support a grant of visitation rights, but also, that such visitation is in the best interest of the child. The legislature, through La. R.S. 9:344, made it less difficult for a parent of the non-custodial parent to obtain visitation with grandchildren in three situations; i.e., when the non-custodial parent is either dead, interdicted or incarcerated. In these three situations, the grandparent is relieved of the burden of showing extraordinary circumstances, but must nevertheless show that visitation is in the best interest of the child. See Lindsey v. House, 29,790, p. 3 (La.App. 2 Cir. 9/24/97), 699 So.2d 1190, 1192.[1] Under both Article 136 and La. R.S. 9:344, the right to visitation rests within the trial court's discretion.
The term "extraordinary circumstances" as used in Article 136 has not been defined in the jurisprudence. Ray v. Ray, 94-1478, p. 3 (La.App. 3 Cir. 5/3/95), 657 So.2d 171, 173. In Ray, the natural father died after divorce from the mother, and there was no paternal grandfather who would have had a right to visitation with the child under La. R.S. 9:344. Accordingly, visitation was sought by the child's paternal great-grandfather and aunt. The third circuit affirmed the trial court's finding of extraordinary circumstances, and opined:
As a result [of the death of father and the absence of a paternal grandfather], the natural conduits through which the [paternal] great-grandfather and aunt might develop a relationship with [the child] are missing. We believe that it is to remedy such situations that La.Civ. Code art. 136 was enacted. Through this article, the law provides a means of maintaining family relationships where they might otherwise be lost to the child. Therefore, the trial court correctly found extraordinary circumstances in this case.
Ray, 94-1478 at 3, 657 So.2d at 173.
Mark and Juanita rely on the holding in Ray, in their quest to be awarded visitation rights. They assert that, as in Ray, extraordinary circumstances exist in the instant case. Mark and Juanita argue that not only is Camille's mother deceased, but they, as the maternal uncle and aunt, like the maternal grandparents, have played a significant role in Camille's life from her birth until Jeffrey's termination of visitation three and a half years later. We disagree and are of the opinion that Mark and Juanita's reliance on Ray is misplaced.
The peremptory exception pleading the objection of no right of action questions the plaintiff's standing or interest in the subject matter of the suit. La. Code Civ. P. art. 927A(5); Guidry v. Dufrene, *356 96-0194, p. 3 (La.App. 1 Cir. 11/8/96), 687 So.2d 1044, 1045. The essential function of the objection is to provide a threshold device that questions whether a plaintiff has a right or legal interest in the claim sued on and whether a remedy afforded by law can be invoked by the plaintiff. Guidry, 96-0194 at 3, 687 So.2d at 1045-46.
At first blush, Article 136 and La. R.S. 9:344 appear to conflict. Thus, as mandated by the final paragraph of Article 136, the provisions of La. R.S. 9:344 shall supercede those of the article. In the instant case, Tricia had filed for divorce, but she and Jeffrey were not divorced prior to Tricia's untimely death. Accordingly, the trial court rejected Mark and Juanita's claim for visitation and awarded visitation rights to Mr. and Mrs. Galjour pursuant to La. R.S. 9:344. We find no error in this determination.
Having found Article 136 to be inapplicable to these facts, there was no need for the trial court to undertake an analysis of the five factors listed in the article to determine if such visitation was in the best interest of Camille. See Henry v. Henry, 97-0366, p. 3 (La.App. 1 Cir. 11/7/97), 704 So.2d 793, 796, writ denied, 97-3054 (La.2/13/98), 709 So.2d 752. Since the maternal grandparents were granted visitation pursuant to La. R.S. 9:344A, it is hoped that they will serve, as intimated by the court in Ray, as the natural conduits through which the maternal uncle and aunt might sustain their relationship with the child.[2] Accordingly, the first and second errors assigned by Mark, Juanita and Mr. and Mrs. Galjour are without merit.
The third and final error assigned by Mark, Juanita and Mr. and Mrs. Galjour, as well as the three errors assigned by Jeffrey, all relate to the trial court's award of visitation privileges to Mr. and Mrs. Galjour. Specifically, Mark, Juanita and Mr. and Mrs. Galjour take issue with the restriction set forth in the trial court's judgment that states, "When staying with the grandparents, the minor child, Camille, shall sleep in a bed provided for her in a designated bedroom at the grandparents' home." The errors assigned by Jeffrey relate to the constitutionality of La. R.S. 9:344A and whether visitation with the maternal grandparents is in the best interest of the child.
We conclude, particularly in light of our holding below, that the sleeping restriction imposed by the trial court fell well within that court's vast discretion. Accordingly, this assignment of error is without merit.
We now address Jeffrey's assertion that R.S. 9:344A is unconstitutional under both the United States and Louisiana constitutions for the reason that it impermissibly infringes upon a parent's liberty interest in raising children without interference from third parties.
In support of the errors assigned by him, Jeffrey cites and relies on a recent United States Supreme Court case, Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). At issue in Troxel was a "breathtakingly broad" Washington state statute (Washington Rev.Code § 26.10.160(3)) that provided that "[a]ny person" may petition for visitation rights "at any time." The statute further authorized courts in that state to grant such rights whenever visitation would serve the best interest of the minor child, regardless of whether there had been any change of circumstances.
In Troxel, two daughters were born as a result of a common-law relationship. Almost two years after the relationship ended, *357 the father died. Thereafter, the mother sought to limit her daughters' regular visitation with the paternal grandparents to one day per month, with no overnight stay. The paternal grandparents filed suit under the Washington statute requesting two weekends of overnight visitation per month and two weeks of visitation each summer. The superior court ordered visitation as follows: one weekend per month, one week during the summer, and four hours on both of the petitioning grandparents' birthdays. The mother appealed, the appellate court reversed, and the Washington Supreme Court affirmed the reversal holding that "[p]arents have a right to limit visitation of their children with third persons," and that between parents and judges, "the parents should be the ones to choose whether to expose their children to certain people or ideas." In re Custody of Smith, 137 Wash.2d 1, 12, 969 P.2d 21, 26-27 (1998).
The United States Supreme Court ultimately granted certiorari and affirmed the judgment of the Washington Supreme Court. In its opinion in Troxel, the Supreme Court stated that "[t]he liberty interest in this casethe interest of parents in the care, custody, and control of their childrenis perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel, 530 U.S. at 65-66, 120 S.Ct. at 2060. The Court went on to rule that the combination of several factors "compels our conclusion that [the Washington statute] as applied, exceeded the bounds of the Due Process Clause." Id. at 65-69, 120 S.Ct. at 2061. In discussing the superior court's visitation order, the Supreme Court stated:
[T]he Troxels did not allege, and no court has found, that Granville [the mother] was an unfit parent. That aspect of the case is important, for there is a presumption that fit parents act in the best interests of their children....
Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.
The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests....
The [Superior Court] judge's comments suggest that he presumed the grandparents' request should be granted unless the children would be "impact[ed] adversely." In effect, the judge placed on Granville, the fit custodial parent, the burden of disproving that visitation would be in the best interest of her daughters....
The decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child....
Finally, we note that there is no allegation that Granville ever sought to cut off visitation entirely....
Considered together with the Superior Court's reasons for awarding visitation to the Troxels, the combination of these factors demonstrates that the visitation order in this case was an unconstitutional infringement on Granville's fundamental right to make decisions concerning the care, custody, and control of her two daughters.... As we have explained, the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because *358 a state judge believes a "better" decision could be made.
Troxel, 530 U.S. at 68-73, 120 S.Ct. at 2061-2064 (citations omitted).
Jeffrey argues the holding of Troxel should be applied here. We disagree. First, unlike the Washington statute determined to have been unconstitutional in Troxel, La. R.S. 9:344 is more narrowly drawn. The Louisiana legislature has determined that in specified, limited situations, i.e., where one parent dies, is interdicted, or incarcerated, the parents of the deceased, interdicted, or incarcerated party may have reasonable visitation rights with the children provided the court finds said visitation to be in the best interest of the child. Unlike the Washington statute, the Louisiana legislature expressly limited the scope of La. R.S. 9:344 to the parents of the deceased or absent parent. Additionally, the statute's grant of visitation does not contemplate a significant intrusion upon the child's relationship with the other parent or interference with said parent's fundamental right to make childrearing decisions.
While the trial court denied Jeffrey's exception as to the constitutionality of La. R.S. 9:344, the transcript of the April 12, 2000 hearing reflects that Jeffrey emphatically denied having a problem with Mr. and Mrs. Galjour seeing Camille. Additionally, the transcript reflects that the trial court went to great lengths in acceding to each condition of visitation imposed by Jeffrey. Said conditions, ranging from the time of visitation, the length of visitation, the responsibility for and location of pick up and delivery of the child, as well as restrictions relating to medical treatment and evaluation, travel, sleeping arrangements, and gifts, were all specifically set forth and made a part of the trial court's judgment.
Considering the testimony in the record regarding the length and quality of the relationship previously enjoyed between Camille and Mr. and Mrs. Galjour, and their stated willingness to honor the wishes of her father, we cannot say that the trial court erred in permitting visitation to take place within the parameters set forth by the child's father. It is our further belief that considering Camille's young age, and the apparent absence of a significant female presence in her life, that Mrs. Galjour could prove to be a reassuring influence especially during Camille's formative years. Accordingly, we find these assignments to be without merit.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is hereby affirmed. All costs associated with this appeal shall be borne equally by the plaintiffs, Mark and Juanita Galjour; the intervenors-plaintiffs, Gaston and Pat Galjour; and the defendant, Jeffrey Alan Harris.
AFFIRMED.
FOGG, J., dissents and assigns reasons.
FOGG, J. dissenting.
I respectfully dissent due to the recent action by the Supreme Court in the case of Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The instant case and Troxel are factually indistinguishable. In both, after the demise of one parent, his/her parents sought visitation with their grandchild/grandchildren, over the objection of the surviving parent who had not been determined to be unfit. In Troxel, the Supreme Court determined that the State of Washington's legislation giving parents of a deceased father visitation rights violated the Due Process Clause and, therefore, was unconstitutional. Although the Louisiana statute is more narrowly drawn than the Washington *359 statute, its language still affords rights to grandparents that the Supreme Court determined are violative of the surviving parent's constitutional rights of custody, care and management of the child. Therefore, I believe LSA-R.S. 9:344A is unconstitutional as it applies to this case, and would reverse the judgment of the trial court.
NOTES
[1] It should be noted that the Lindsey decision was rendered prior to the 1999 legislative amendment of La. R.S. 9:344A, which afforded parents of incarcerated persons reasonable visitation rights with their grandchildren where the court finds such visitation to be in the best interest of the child or children involved. See 1999 La. Acts No. 352, § 1.
[2] In the transcript of the April 12, 2000 hearing, Jeffrey's attorney remarked that Mark and Juanita, and Mr. and Mrs. Galjour "live right behind each other."