835 So.2d 568 (2002)
Lachelle Gerald WOOD
v.
William Gerald WOOD.
No. 2002 CU 0860.
Court of Appeal of Louisiana, First Circuit.
September 27, 2002.
*570 J. Edward Thompson, Slidell, Counsel for Plaintiff-Appellant Lachelle Gerald Wood.
Sondra A. Cheek, Bogalusa, Counsel for Intervenors-Appellees Gerald and Rita Wood.
Before: FOGG, FITZSIMMONS, DOWNING, KLINE[1] and LANIER[2], JJ.
FITZSIMMONS, J.
This appeal seeks review of a trial court judgment modifying a consent judgment between a domiciliary parent and paternal grandparents. The judgment granted additional visitation between the paternal grandparents and their granddaughter. The natural father is incarcerated. We reverse and remand.

FACTS AND PROCEDURAL HISTORY
In February 1995, appellant, Lachelle Wood, filed a Petition for Divorce in an effort to dissolve her approximately three-and-a-half year marriage to William Wood. Additionally, she sought temporary custody of their minor child, E.M.W. In May 1995, the parties entered into a consent judgment of custody. That judgment awarded joint custody to the parents, Lachelle and William Wood, designated the mother, Lachelle Wood, as the domiciliary parent, and awarded visitation of one weekday to appellees, the paternal grandparents, Rita and Gerald Wood. The judgment further provided the father, William Wood, with visitation in Utah.[3] The same judgment also awarded the mother child support and ordered the father to provide medical insurance. Thereafter, the marital union of Lachelle and William Wood was terminated by a judgment of divorce dated October 9, 1995.
In February 1999, the mother filed a rule to change the joint custody arrangement to a sole custody award. The mother alleged that joint custody had become detrimental to the child, E.M.W. As supporting reasons, the mother alleged that the father had a recent history of criminal sexual abuse and was incarcerated in Utah.[4] After a hearing, the trial court issued a judgment on May 24, 1999 that restricted the paternal grandparents' visitation and ordered the grandparents not to allow the child contact with the incarcerated father. On June 28, 1999, after service was made upon the father, his visitation was suspended, and a judgment awarding the mother sole custody of E.M.W. was granted.
*571 In August 2000, the grandparents filed a Petition for Intervention seeking a modification of the prior orders concerning their visitation with E.M.W. In response, the mother filed an answer and reconventional rule for contempt and for modification of visitation. She contended that the grandparents violated prior court orders by allowing E.M.W. telephone contact with her father and had planned a Utah visit between E.M.W. and her father. For these reasons, the mother sought supervised visitation at the mother's discretion. On November 6, 2000, the mother and the grandparents entered into a stipulated judgment. The judgment maintained the mother's sole custody designation and permitted visitation with the grandparents on the first weekend of each month, on one Sunday every other month, and one day and one night on all major holidays. In addition to ordering the grandparents to continue paying $200.00 monthly support, the judgment again prohibited the grandparents from allowing any contact between E.M.W. and her father.[5]
On November 29, 2000, the grandparents filed a rule for contempt alleging that the mother refused to comply with the visitation schedule outlined in the November 6, 2000, judgment. The grandparents also prayed that the November 6, 2000, judgment be modified to specify a meeting place for exchange of visitation and to specify times of visitation. On January 12, 2001, the grandparents filed a Motion for Continuance in an effort to arrive at an amicable visitation schedule. In July 2001, the grandparents filed another rule to show cause contending they were unsuccessful in arranging with appellant a specific time for a summer vacation. Thus, they sought a modification of visitation that would designate a specific time for summer vacation. Following a hearing, the trial court granted the grandparents' request for modification and ordered one week visitation for the summers of 2001 (commencing July 31, 2001) and 2002.

NONPARENT VISITATION
From the ruling granting additional visitation to the grandparents, the mother, Lachelle Wood, has filed the instant devolutive appeal. The issue is whether the trial court abused its discretion in modifying the consent judgment to permit the paternal grandparents additional visitation with E.M.W.

DISCUSSION
Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), is the most recent authority on this subject-matter from the United States Supreme Court. In Troxel, the Supreme Court recognized that one of the byproducts of the changing infrastructure of society at large, and the family unit in particular, is an accommodation in the law for extending visitation to nonparents. While recognizing many benefits of this practice, the Supreme Court rejected any visitation scheme that trampled upon the sacred and paramount rights of a fit parent to dictate the best interests of his or her children. Troxel, 530 U.S. at 63-67, 120 S.Ct. at 2059-61.
Specifically, Troxel involved a request by paternal grandparents, following the death of their son, for visitation with two granddaughters born of the relationship between their son and a companion whom he never married. Troxel, 530 U.S. at 60, 120 S.Ct. at 2057. The girls' mother did not oppose all visitation, but objected to the amount sought by the Troxels. Troxel, *572 530 U.S. at 61, 120 S.Ct. at 2058. The Troxels' request for visitation was made under authority of a Washington statute. The statute provided that: "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances." Troxel, 530 U.S. at 61-62, 120 S.Ct. at 2057-8. The United States Supreme Court found the Washington statute "breathtakingly broad" and declared it unconstitutional as applied. Troxel, 530 U.S. at 67 & 73, 120 S.Ct. at 2060-61 & 2064. In doing so, the justices placed particular emphasis upon parents' constitutionally protected fundamental right to make decisions concerning their children, the presumption that parents act in the best interest of their children, and the failure of the Washington statute or court to give some "material" or "special" weight to the parent's own determination on the issue of visitation. Troxel, 530 U.S. at 65-72, 120 S.Ct. at 2060-63. The Supreme Court noted that the contested statute rendered a custodial parent effectively voiceless in deciding what is in the child's best interest, while simultaneously extending unfettered discretion to the trial judge to make such a determination. In the opinion of the Troxel court, the Washington statute allowed the trial judge to "disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." Troxel, 530 U.S. at 67, 120 S.Ct. at 2061.
Subsequent to Troxel, in Galjour v. Harris, 2000-2696 (La.App. 1 Cir. 3/28/01), 795 So.2d 350, writs denied, XXXX-XXXX & 1273 (La.6/1/01), 793 So.2d 1230, cert. denied, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 422 (2001), this court confronted the issue of nonparent visitation in the context of Louisiana's two controlling provisions: Louisiana Civil Code art. 136 and La. R.S. 9:344. One of the issues raised was the constitutionality of La. R.S. 9:344.[6]Galjour, 2000-2696 at p. 9, 795 So.2d at 356. In upholding La. R.S. 9:344, this court concluded that the Louisiana statute was more narrowly drawn than the Washington statute at issue in Troxel. The Louisiana statute limited both the circumstances and applicants for nonparent visitation. Galjour, 2000-2696 at pp. 9-11, 795 So.2d at 356-58.
However, on May 24, 2001, after Galjour was decided, the Louisiana Legislature expressed its concern for protecting the fundamental rights of parents. Out of its concern, the legislature enacted House Concurrent Resolution No. 68 of the 2001 Regular Legislative Session. The resolution directs the Louisiana State Law Institute to study the effect of Troxel on Louisiana's laws relative to child visitation. Against this backdrop of Troxel and our legislature's concern, we undertake review of the mother's challenge to the grant of additional nonparent visitation.
Louisiana Civil Code art. 136 and La. R.S. 9:344 both speak to visitation by nonparents. La. Civ.Code art. 136 provides, in pertinent part:
B. Under extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or stepgrandparent, *573 not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall consider:
(1) The length and quality of the prior relationship between the child and the relative.
(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.
(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.
(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.
(5) The mental and physical health of the child and the relative.
C. In the event of a conflict between this Article and R.S. 9:344 or 345, the provisions of the statute shall supercede those of this Article.
Also in pertinent part, La. R.S. 9:344 provides:
A. If one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage, the parents of the deceased, interdicted, or incarcerated party without custody of such minor child or children may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children. (Emphasis added.)
In Galjour, this court recognized that the legislature eliminated the burden of showing "extraordinary circumstances" when the non-custodial parent is either dead, interdicted, or incarcerated. Galjour, 2000-2696 at p. 7, 795 So.2d at 355. In essence, the legislature made the determination, rather than the court, that the death, incarceration, or interdiction of a parent qualified as "extraordinary circumstances." Although the nonparent is relieved of one burden, the nonparent must nevertheless show that the requested visitation is "reasonable" and in the "best interest" of the child. La. R.S. 9:344.
When granting or modifying visitation to a nonparent, the trial court must exercise care not to apply either Civil Code art. 136 or La. R.S. 9:344 in a vacuum. Instead, the trial judge must balance these state provisions against a fit parent's constitutionally protected fundamental right of privacy in child rearing, and remember that any rights of nonparents are ancillary to that of a fit parent. Troxel, 530 U.S. at 65-73, 120 S.Ct. at 2060-64; Reinhardt v. Reinhardt, 97-1889, p. 5 (La. App. 1 Cir. 9/25/98), 720 So.2d 78, 80, writ denied, 98-2697 (La.12/18/98), 734 So.2d 635, cert. denied, 526 U.S. 1114, 119 S.Ct. 1761, 143 L.Ed.2d 792 (1999). The burden of proof is properly placed on the mover, the nonparent, to meet the legislative best interest requirement. It is the court's responsibility to balance state requirements with constitutional protections. In considering the best interest of the child, the trial court must be aware that as nonparent visitation increases, the infringement and burden on the parent's fundamental right of privacy in child rearing increases proportionally. Visitation that unduly burdens parental rights would be unconstitutional, regardless of the provisions of statutory law. Reinhardt v. Reinhardt, 97-1889, p. 5 (La.App. 1 Cir. 9/25/98), 720 So.2d 78, 80, writ denied, 98-2697 (La.12/18/98), 734 So.2d 635, cert. denied, 526 U.S. 1114, 119 S.Ct. 1761, 143 L.Ed.2d 792 (1999).
In this instance, the grandparents sought a modification to allow for a *574 two week summer vacation. After listening to the testimony of the grandparents, the mother, and her current husband, Keith Darrell Barber, the trial judge rendered the following pertinent oral reasons in support of his decision to allow one week:
I think the evidence that's been presented here today is indicative of grandparents who have a very loving relationship with this child, who I think are beneficial to this child for her to have some contact with her grandparents.... [G]randparents tend to spoil grandchildren...oftentimes when grandchildren go off to visit the grandparents... there is a little period of time that requires some adjustment....
So I believe that it's in the best interest of this child to have a continued relationship with her paternal grandparents. There was no evidence presented to me by Ms. Barber [appellant], she said that they've done nothing to harm [E.M.W.]. She says that they haven't violated the November 2000 judgment... I don't see how it's going to be detrimental for this child for her to spend a week with her grandparents on vacation.... (Emphasis added.)
The nonparent seeking a modification must prove that the proposed change in visitation would be "reasonable" and in the "best interest" of the child.[7] La. R.S. 9:344; Galjour, 2000-2696 at p. 7, 795 So.2d at 355. However, the trial judge in this case, in a manner strikingly similar to the lower court judge in Troxel, placed a burden on the mother to show that summer vacations with the grandparents would be detrimental.[8] By improperly placing the burden on the natural parent and using the wrong analysis, the trial court fell into reversible error.
*575 We again recognize that the fragmentation of the primary family presents cases where the state may have a legitimate and substantial interest in extended family relationships between children and nonparents, such as grandparents. However, the state interest must be compelling, narrowly drawn, and not unduly intrusive of parental rights. Reinhardt, 97-1889 at pp. 4-5, 720 So.2d at 80-81. Thus, before its decision on the reasonableness of the visitation and the child's best interest, the trial court must consider the presumption that the mother acted in the best interest of the child. Some "special" or "material" weight must be given to the mother's determination of the best interest of her child. Troxel, 530 U.S. at 70-72, 120 S.Ct. at 2062-63. Under such an analysis, simple disagreements over the amount of visitation would not generally be sufficient to outweigh the rights of the mother to decide what is in the best interest of her child. See Troxel, 530 U.S. at 68-69, 120 S.Ct. at 2061.

CONCLUSION
For the foregoing reasons, the judgment mandating summer visitation is reversed. The matter is remanded to the trial court for reevaluation of its decision in light of this opinion. Upon rendering a new judgment on the issue of additional visitation to the grandparents, the court must provide an articulation of the court's analysis and reasons for its decision. Reinhardt, 97-1889 at p. 4, 720 So.2d at 80. Costs of this appeal are assessed to Gerald and Rita Wood, Intervenors/Appellees.
REVERSED AND REMANDED.
KLINE, J., dissents and would affirm that court.
DOWNING, J., dissents and assigns reasons.
DOWNING, J., dissents and assigns reasons.
I respectfully dissent. After hearing the testimony and evidence presented by the parties, the trial court found additional visitation between E.M.W. and her paternal grandparents of one week during the summer to be in E.M.W.'s best interest. The trial court's comments cited by the majority explain that the child's parent did not disprove its conclusion that summer visitation was in the child's best interest. The trial court did not impose the burden on the child's mother to prove additional visitation was detrimental.
Further, we should not insert constitutional issues that have not been raised at the trial court into our analysis. Even so, this court in Galjour v. Harris, 2000-2696, p. 11 (La.App. 1 Cir. 3/28/01), 795 So.2d 350, 358, writs denied, XXXX-XXXX and XXXX-XXXX (La.6/1/01), 793 So.2d 1229 and 1230, cert. denied, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 422 (2001), concluded that LSA-R.S. 9:344 did not violate constitutional protections afforded to parents because "the Louisiana legislature expressly limited the scope of LSA-R.S. 9:344 to the parents of the deceased or absent parent."
The Galjour court did observe that "the statute's grant of visitation does not contemplate a significant intrusion upon the child's relationship with the other parent or interference with said parent's fundamental right to make childrearing decisions." Galjour, 2000-2696 at p. 11, 795 So.2d at 358. I do not see how an additional one-week of visitation during the summer would be a significant intrusion on the child's relationship with her mother or an interference with her right to make child-rearing decisions. Nonetheless, the unconstitutional application of LSA-R.S. 9:344, which is not at issue here, is an entirely separate and distinct inquiry from whether the ordered visitation is in the *576 child's best interest. E.M.W.'s best interest is at issue here. And the trial court concluded that the additional visitation was in E.M.W.'s best interest.
In Galjour, this court explained that "[e]very child custody case must be viewed within its own peculiar set of facts. The trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown." Galjour, 2000-2696 at p. 5, 795 So.2d at 353-354. Further, as an appellate court, we cannot set aside the trial court's factual findings unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Here, the trial court concluded in its oral reasons that the additional one-week visitation between E.M.W. and her grandparents was in her best interest because the contact would be beneficial for her and because the additional visitation would help continue the grandparent-grandchild relationship between them. Evidence in the record supports the trial court's conclusion that this additional visitation is in E.M.W.'s best interest including evidence that she visits cousins while at her grandparents' home, she is happy at her grandparents' home, and she wants to go on vacation with her grandparents. Evidence also shows that strains have developed in the relationship between E.M.W. and her grandparents, from various causes, that additional visitation might ameliorate. Under these circumstances,[1] I cannot conclude the trial court abused its discretion in awarding the grandparents an additional one-week visitation during summers.
Accordingly, I would affirm the trial court.
NOTES
[1] The Honorable William F. Kline, Jr., Judge, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The Honor Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[3] The parent's last marital domicile was in Salt Lake City, Utah. After the couple separated, the father remained in Utah while the mother returned to Washington Parish in Louisiana.
[4] At the hearing, the child's paternal grandmother testified that the child's father "raped his wife's sister."
[5] From the record, it seems as if the grandparents voluntarily assumed the father's child support obligation upon his incarceration, and were ordered to continue doing so.
[6] In Reinhardt v. Reinhardt, 97-1889 (La.App. 1 Cir. 9/25/98), 720 So.2d 78, writ denied, 98-2697 (La.12/18/98), 734 So.2d 635, cert. denied, 526 U.S. 1114, 119 S.Ct. 1761, 143 L.Ed.2d 792 (1999), rendered prior to the Troxel decision, the constitutionality of Louisiana Civil Code art. 136B was attacked as an impermissible infringement on a parent's fundamental rights. The codal article was found to be narrowly drawn, and was maintained.
[7] Without detracting from the applicability of La. R.S. 9:344 to the situation here, the factors listed in Civil Code article 136 B may be of some guidance to the trial court in its best interest review.
[8] In Troxel, the United States, Supreme Court found that the trial court put the burden on the parent to disprove that visitation would be in her daughters' best interest. Specifically, the court stated:

The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests. More importantly, it appears that the Superior Court applied exactly the opposite presumption. In reciting its oral ruling after the conclusion of closing arguments, the Superior Court judge explained:
"The burden is to show that it is in the best interest of the children to have some visitation and some quality time with their grandparents. I think in most situations a commonsensical approach [is that] it is normally in the best interest of the children to spend quality time with the grandparent, unless the grandparent, [sic] there are some issues or problems involved wherein the grandparents, their lifestyles are going to impact adversely upon the children. That certainly isn't the case here from what I can tell."
The judge's comments suggest that he presumed the grandparents' request should be granted unless the children would be "impact[ed] adversely." In effect, the judge placed on Granville, the fit custodial parent, the burden of disproving that visitation would be in the best interest of her daughters. The judge reiterated moments later: "I think [visitation with the Troxels] would be in the best interest of the children and I haven't been shown it is not in [the] best interest of the children."
The decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child. In that respect, the court's presumption failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters.
Troxel, 530 U.S. at 69-70, 120 S.Ct. at 2062 (citations omitted).
[1] While this court would have benefited from a more complete articulation of the trial court's analysis of E.M.W.'s best interest, and we strongly encourage trial courts to articulate their analyses, where the record supports a determination, the trial court's failure to articulate such a finding is not legal error. See by analogy Rupert v. Swinford, 95-0395, p. 4 (La.App. 1 Cir. 10/6/95), 671 So.2d 502, 505.