667 So.2d 1213 (1996)
Robert PENDERGRASS
v.
Pamela Wadell PENDERGRASS.
Nos. 94-CA-1165, 94-CA-1629.
Court of Appeal of Louisiana, Fourth Circuit.
January 26, 1996.
Order Granting Limited Rehearing February 27, 1996.
*1214 Bruce M. Danner, Metairie, for Plaintiff/Appellant, Robert Pendergrass.
Theon A. Wilson, Dreola M. Guyton, New Orleans, for Defendant/Appellee, Pamela Pendergrass.
Before LOBRANO, WALTZER and MURRAY, JJ.
MURRAY, Judge.
Robert Pendergrass (Robert) appeals rulings of the trial court (1) disallowing credit to him for out-of-pocket child care expenses incurred during his visitation time with his children; (2) reducing his visitation privileges; and (3) denying him retroactive effect of the court's $142.55 reduction of his monthly child support payments.
Pamela Pendergrass (Pamela), in her answer to appeal, alleges that the trial court erred in its computation of Robert's income in three respects: (1) in calculating Robert's monthly income based on an average of his income over the course of a year; (2) in failing to find that Robert underreported his earnings to the court; and (3) in failing to include the income of Robert's new wife in the calculation of Robert's income.
We affirm on the issue of retroactivity of the judgment. However, we modify the monthly support obligation of Robert to reflect a reduction of the total support obligation in light of the court's ruling that Robert was not entitled to a credit for out-of-pocket child care expenses, and modify on the issue of visitation.
The facts are as follows: Robert and Pamela Pendergrass, parents of three minor children, were divorced in 1992. By judgment *1215 of March 9, 1992, the parties were awarded joint custody of their children, with Pamela being designated as the primary custodial parent. Robert was granted specific visitation privileges as follows: weekday visitation from 3:00 p.m. to 6:15 p.m. on at least Tuesday, Wednesday, and Thursday; alternate weekends, holidays, and special events; and continuous visitation for at least two-thirds of the children's summer vacation.
On July 29, 1993, Robert filed a Motion for Reduction of Child Support Obligations and Alternative Relief, in which he averred that he "[was] no longer able to care for [his] children during all of his weekly and summer visitation" due to changed circumstances in his employment and to the children's school enrollment. Because of these changes in circumstance, Robert claimed that he was forced to pay for child care during his weekly visitation with his children. He sought a reduction of his child support payments to Pamela or, alternatively, "an adjustment of the joint custody plan and visitation so as to decrease his costs associated with child care."
Pamela opposed the motion, and moved to have the child support payments increased, alleging that Robert had misstated and underreported his monthly income to the court.
Following hearing on the motions in November, the trial court entered a judgment on December 3, 1993. The court found that Pamela's gross monthly income was $1,834.00. Based on an average of Robert's earnings from self-employment over the previous year, the court found that his gross monthly income was $798.00. Applying the guidelines set forth in La.R.S. 9:315 et seq., the court reduced Robert's monthly child support obligation from $500.00 to $357.45. The judgment provided that the support calculations did not include any health care premiums, as the children could be covered at no additional cost under a health insurance policy available to Robert's new wife.
By judgment of February 10, 1994, in response to new trial motions by both sides, the court amended its original judgment to provide that the December 3, 1993, judgment not be given retroactive effect, and also to specifically order Robert to maintain major medical insurance on behalf of his three children through his current wife's employer, Childrens' Hospital.
In March, 1994, Robert filed a series of motions again seeking, among other things, reimbursement of the out-of-pocket child care expenses or, alternatively, an adjustment in his visitation schedule. More specifically, Robert requested that either the court order Pamela to reimburse him for child care expenses, including the cost of summer camp for the children, or allow him a credit for these expenses against his child support obligation.
Alternatively, Robert requested that the visitation schedule be modified as follows: reduce the weekday visitation from three to two afternoons a week and to modify the hours of weekday visitation from 3:00 p.m. to 6:15 p.m. to 4:30 p.m. to 6:30 p.m. so that he would not incur the child care costs; extend the alternate weekend visitation into Monday; reduce the summer visitation from two continuous months to two continuous weeks with alternating weekends.
On April 25, 1994, a hearing was scheduled to hear the latest of Robert's motions. Apparently, after a pre-trial in chambers, the judge ordered that the stipulations agreed to by the parties in chambers be read into the record. That transcript would form the basis for a consent judgment between the parties. However, after all of the stipulations were read, Robert withdrew his consent. Robert requested that the court instead render the stipulations as an order of the court. The court did as he requested. Robert's counsel then requested that the court address the parties relative to the reason for reduction of visitation:
Neither party is to address the children as it relates as to why Mr. Pendergrass is having a reduce [sic] visitation schedule. If a question is posed by anyone [sic] of the children as to why Mr. Pendergrass is seeing them less, visiting with them less, the response is: `That was the Order and decision of the Court.' Do not go into any more than that. If the questions persist, then, feel free to contact your counsel, and have counsel contact me, and I'll make an effort to set up a situation where I try with *1216 the children directly and let them know that there were practical considerations in bring [sic] about that reduction. It had nothing to do with their father's feelings.
According to that judgment, Robert was to continue paying $357.45 in monthly child support. Robert's weekday visitation schedule was altered to allow visitation on alternate Wednesdays from 3:00 p.m. until 6:15 p.m. during the week following a non-visitation weekend. The summer visitation was modified to provide that Robert and Pamela would each have two continuous weeks with the children during the summer. The holiday and special events visitation schedule was not changed.
Several other issues were included in the April 25 transcript, but as those issues are not before us on appeal, we pretermit discussion of them.

CHILD SUPPORT
Robert contends that the court erred by refusing to give him credit for out-of-pocket child care expenses incurred by him during his visitation time with his children.
Louisiana Revised Statute 9:315.3 provides that net child care costs shall be added to the basic child support obligation. Net child care costs are defined as "the reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care." La.R.S. 9:315(7). In calculating the total support obligation, La.R.S. 9:315.8(D) states:
The party without legal custody or nondomiciliary party shall owe his or her total child support obligation as a money judgment of child support to the custodial or domiciliary party, minus any court-ordered direct payment made on behalf of the child for work-related net child care costs, ... provided as adjustments to the schedule. (emphasis added)
The court recognized this statutory provision in denying Robert's request for credit of his child care expenses. In the transcript of the hearing on the Motions for New Trial, the judge stated, "[T]he only thing [Mr. Pendergrass is] responsible for paying is what's outlined in the Judgment.... I am saying he's responsible for paying the money directly to his ex-spouse, that is the only monies [sic] that he is ordered to pay in terms of child support." The Court further stated that "If, in fact, the whole reason for after care happens to emanate from his inability to care for [the children], then I would tax him for that cost.... The amounts are to go to [Pamela], and not to a third party.... [I]t's up to the custodial parent to make the determination as to whether or not [the child care] funds ... serve the best interest of the children by paying after care."
Robert is not the custodial parent. Child care expenses paid by him were incurred of his own volition, without the consent of the custodial parent or the court. The court properly disallowed credit for these child care costs because Robert was not ordered to pay them.
However, although the trial court properly refused to credit the child care payments by Robert and applied the statutory formula, it appears that the trial court inadvertently included the amount paid by Robert for child care in calculating the total support obligation. Because this expense was already borne out-of-pocket by Robert, and the court decided that he was not entitled to a credit, it should not have been added to the basic support obligation. By doing so, Robert was paying out-of-pocket and then again paying thirty percent of the expense (his percentage of the total obligation) to Pamela in child support.
The court determined the basic support obligation to be $807.00 (before adding in the child care expense), and that Robert's share of the monthly adjusted gross income was thirty percent. Thus, Robert's share of the total support obligation should have been $242.10. Accordingly, the judgment is amended to reflect this adjustment.

VISITATION:
Robert alleges that the court erred in reducing his visitation with his children. We agree.
The guiding principle in matters of child custody, of which visitation is a part, is the best interest of the children. Bergeron v. *1217 Bergeron, 492 So.2d 1193, 1199 (La.1986). In matters of visitation, the court is vested with much discretion and its findings will not be upset absent an abuse of discretion. Zatzkis v. Zatzkis, 632 So.2d 307, 320 (La.App. 4th Cir.1993), writ denied, 94-0157 (La. 6/24/94), 640 So.2d 1340, and writ denied, 94-0993 (La. 6/24/94), 640 So.2d 1341.
While we recognize the apparent frustration of the trial judge in his attempt to resolve an obviously bitter dispute, we find that the severe curtailment of Robert's visitation with his children was an abuse of discretion.
In his recurring motions, Robert was attempting to obtain some relief from a financial burden created by a change in his employment. At no time did he declare that he did not want to visit with his children for any reason other than a financial one. As noted above, Robert requested the court to instruct the parties that they were not to discuss why Robert was visiting less with his children. The court stated that the reduced visitation had "nothing to do with their father's feelings.
The change in visitation requested by Robert was brought about because the court correctly denied him credit for child care costs. Robert's first motion requested a credit for child care, or, in the alternative, an adjustment in visitation. Originally, Robert had visitation three days a week from 3 p.m. to 6:15 p.m. He would pick up his children from school and visit with them until Pamela got home from work. Robert testified at the November hearing that his work schedule had changed and he was no longer able to pick up his children at 3 p.m., but was instead placing them in child care until at least 4:30 p.m. The cost of child care was what prompted him to file his first motion. That motion requested that he be given credit for the child care costs, or alternatively, that the court adjust the visitation plan. Robert did not ask that his visitation be reduced.
Robert filed his second motion; he again asked that the court adjust his visitation, not reduce it. He asked that his weekday visitation be reduced to two days per week from 4:30 p.m. to 6:30 p.m., but that he be allowed to keep his children overnight on Sundays when he exercised his weekend visitation. In its ruling on this motion, the court did not grant the adjustments requested by Robert, but instead severely cut back on his visitation.
In deciding to modify the trial court's visitation schedule, we first note that the record contains no evidence that Robert's visitation with his children was in any way harmful to them. We also note that the adjustments Robert requested would allow him to spend time with his children, as opposed to them being in aftercare. The plan ordered by the trial court did not accomplish this at all. Instead, Robert's visitation was reduced to one day every other week from 3 p.m. to 6:15 p.m.
Our decision also addresses the legislative directive that courts should attempt, to the extent feasible, to divide custody of the children as equally as possible. La.R.S. 9:335(A)(2)(b). Thus, we believe a more equitable solution would be to continue to allow Robert liberal visitation, however, to allow it at times when child care would not be incurred by him, and when he could actually spend time with his children.
Accordingly, we amend the trial court's judgment to allow Robert visitation with his children as follows: Every Wednesday from 6 p.m. to 8 p.m., and alternating weekend visitation from 6 p.m. on Friday, until Monday morning. Robert is responsible for transporting the children to school on those mornings. All other provisions for custody and visitation are affirmed.

RETROACTIVE APPLICATION OF JUDGMENT:
Robert also argues that the court's reduction of his child support obligation should have been retroactive to the date of the filing of his motion to reduce pursuant to La.R.S. 9:310, and contends that the trial court erred in fixing the date of the reduction as December 3, 1993.
Robert acknowledges that subpart "C" of R.S. 9:310 allows the court the discretion not to make an award of child support retroactive upon finding good cause. However, he contends that a specific evidentiary finding of *1218 good cause is required in order for a court not to make the support award retroactive, citing Clinton v. Clinton, 598 So.2d 711 (La. App. 5th Cir.1992). Pamela, relying on Tobin v. Thompson, 485 So.2d 553 (La.App. 5th Cir.1986), argues that the trial court is presumed to have found good cause when it fixes a date when an award becomes effective, without a requirement that it enunciate reasons for not making the award retroactive.
The court in Clinton explained as it had in Tobin that "when the trial judge does not make the reduction retroactive to the motion's filing date, it is presumed that he found good cause to do otherwise." Clinton, 598 So.2d at 712. Further the Tobin court specifically held:
(1) that R.S. 9:310 does not make it mandatory for the trial judge to give, either orally or in the formal judgment, his reasons for finding good cause and therefore not making the reduction retroactive to the filing date of the motion to reduce, (2) that a finding of good cause is presumed if the reduction is not retroactive to the motion to reduce's filing date and (3) that if reasons are not given for not making the reduction fully retroactive, an affected litigant should request that the trial judge articulate his good cause findings if he or she wishes to later assert on appeal that good cause was not adequately shown and that the trial judge erred in finding to the contrary.
Tobin, 485 So.2d at 554-555.
The record does not reveal that Robert requested reasons for judgment on this issue. Accordingly, we find no error in the trial court's ruling.

PAMELA'S ASSIGNMENTS OF ERROR:
We turn now to Pamela's assignments of error raised in her answer to the appeal. Pamela contends that the court erred in calculating Robert's income.
She first argues that the trial court erred in computing Robert's monthly income based on an average of twelve months rather than the single month of filing. We disagree. Robert is self-employed. The record supports a finding that his income from his business is neither constant nor stable. Under these circumstances, basing the income calculation on an average of twelve months more accurately reflects the realities of his situation, and is the more equitable approach. This assignment is without merit.
Pamela's second contention is that the court erred when it failed to find that Robert underreported his income. This was a factual determination by the trial court that will not be disturbed on appeal absent an abuse of its discretion. The record supports the court's conclusion that Robert had not underreported his income. The trial court did not abuse its discretion in this regard, and this assignment has no merit.
Finally, Pamela asserts that the trial court should have considered the income of Robert's current spouse in calculating his income. Louisiana Revised Statute 9:315(6)(c) provides that:
The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of the party's actual expenses. (emphasis added.)
The language of the statute is permissive, not mandatory. Therefore, it is within the discretion of the trial court to include or disallow such alleged "benefits." Lewis v. Lewis, 616 So.2d 744 (La.App. 1st Cir.1993), writ granted in part, denied in part, 624 So.2d 1211 (La.1993).
The record supports the court's refusal to include the current Mrs. Pendergrass's income in calculating Robert's income. Thus, we find no error in the finding of the trial court.
Accordingly, for the reasons assigned above, the decision of the trial court, as amended, is affirmed.
JUDGMENT AMENDED IN PART; AFFIRMED AS AMENDED; AND RENDERED.

*1219 ON REHEARING
PER CURIAM.
REHEARING GRANTED. Our opinion in this matter is unchanged. However, we grant rehearing for the limited purpose of amending our original decree to provide that both parties are to share the costs of the appeal.