786 So.2d 193 (2001)
Betty S. KERN
v.
Jay H. KERN.
No. 2000-CA-1126.
Court of Appeal of Louisiana, Fourth Circuit.
April 25, 2001.
*194 Clement F. Perschall, III, Dennis M. LaBorde, Baldwin & Haspel, L.L.C., New Orleans, Counsel for Plaintiff/Appellant.
Suzette Marie Smith, Frank P. Tranchina, Jr., Dutel & Tranchina, L.LC., Metairie, Counsel for Defendant/Appellee.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge DAVID S. GORBATY.
GORBATY, J.
Betty S. Kern appeals a judgment of the trial court granting Jay H. Kern's Motion for Reduction of Child Support, claiming *195 that the trial court made numerous errors in calculating the reduction. Jay Kern answers the appeal also claiming various errors in the trial court's calculation of the reduction, and that the trial court erred in dismissing his motion for reimbursement of certain school-related expenses for his children.[1] For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY:
Jay and Betty Kern were married in 1974. Of this marriage, two children were born. In 1994, Betty filed for divorce, which was granted in May 1996. Prior to the finalization of the divorce, Betty and Jay entered into a consent judgment on February 7, 1995, whereby they agreed, among other things, that Jay would pay child support of $1,300 per month and one hundred percent of the children's tuition and registration fees at Newman School, and would maintain the children on a health and hospitalization plan. On March 14, 1997, following a community property settlement, the parties entered into another consent judgment basically adopting the prior judgment as to child support, and further providing that any subsequent request for modification of child support would require a change of circumstances from the date of the first consent judgment.
In June of 1999, Jay filed a Rule for Decrease in Child Support and for Reimbursement. He claimed a material change in circumstances in three respects: 1) his annual salary as an attorney had decreased significantly since the 1995 judgment; 2) Betty had remarried and was deriving financial benefits from her new husband; and, 3) tuition and registration fees for Newman School, for which he was one hundred percent responsible, had increased significantly.
The trial court rendered judgment on October 22, 1999, reducing Jay's child support obligation to $822.50 per month. The court further ordered that each party would be fifty percent responsible for basic school tuition and registration, as well as all mandatory school expenses necessary for the children's education and continued enrollment in school, all extraordinary medical expenses, and the children's health and hospitalization insurance premium. The judgment is silent as to Jay's rule for reimbursement.
Betty has appealed the judgment, and Jay has answered the appeal.

DISCUSSION:

A. Betty's Appeal
Betty makes several assignments of error claiming that the trial court erred in the calculation of both her and Jay's adjusted gross income.
1) Betty claims that the trial court erred in using only Jay's 1998 tax return when determining his adjusted gross income. She relies on Pendergrass v. Pendergrass, 94-1165, 94-1629 (La.App. 4 Cir. 1/26/96), 667 So.2d 1213, writ denied 96-0719 (La.4/26/96), 672 So.2d 908, arguing that because Jay's income fluctuated between 1994 and 1998, the trial court should have averaged his income.
In Pendergrass, this Court found no error with the trial court's use of a twelve-month average to determine Mr. Pendergrass's monthly income. Mr. Pendergrass was self-employed and his income was neither constant nor stable. This Court stated that "[u]nder these circumstances, basing the income calculation on an average of *196 twelve months more accurately reflects the realities of [the] situation, and is the more equitable approach." 94-1165 at p. 10, 667 So.2d at 1218.
The facts of this case do not warrant averaging Jay's yearly income from 1994 through 1998. Jay introduced his 1994, 1996, 1997 and 1998 tax returns into the record to demonstrate a material change in circumstances sufficient to warrant a reduction in child support. The returns reflect that Jay's income for 1994 was $194, 271. This was the income figure used to make the initial child support determination. According to his tax returns, his income for 1996, 1997 and 1998 was $103,409, $110,127, and $100,004, respectively.[2] Thus, because Jay's income decreased significantly from 1994 to 1996, and remained significantly lower in 1997 and 1998, we find income averaging to be inappropriate in this case. Louisiana Revised Statute 9:315.2 provides that a party must provide the most recent federal tax return for a determination of child support. We find no abuse of discretion in the trial court considering only Jay's most recent tax return for determination of his adjusted gross income.
2) Betty argues that the trial court erred when it refused to consider Jay's expense reimbursement paid by his firm. She claims that because Jay is being reimbursed for business-related expenses, his personal living expenses are being reduced. We find nothing in the record to support this contention.
Both Jay and Melo Nix, a certified public accountant, testified that Jay submits receipts and vouchers to his firm for business-related expenses and is reimbursed for those expenses. The law firm claims the expenses on its tax return. Jay denied that he was reimbursed for any personal expenses, and further explained that if his business cell phone bill exceeded his monthly contract, he personally paid the difference. Betty offered no proof that Jay's personal living expenses were reduced because of this business practice, nor was any proof offered that the expenses being reimbursed were Jay's personal expenses. See La.Rev.Stat. 9:315(4)(b). Thus, we find no error in the trial court not including this amount in its calculation of Jay's adjusted gross income.
3) Betty also argues that the trial court erred by not including $7,596 that Jay voluntarily contributed to his retirement account in Jay's adjusted gross income. We disagree that the trial court did not include this amount in its calculation. The record reflects that the trial court derived the figure used as Jay's income from his law firm's IRS Form K-1. That figure, $116,346, reflected Jay's gross income from the firm. The $116,346 included the $111,628 that Jay reported on his 1040 as partnership income, $845 for a partnership-related deduction, and $3,873 of business-related expenses for Jay's automobile that he took as a deduction on his personal income tax. Thus, the $111,628 reported as partnership income included the $7,596 that Jay contributed to his retirement account.
4) Betty argues that the trial court erred in calculating her adjusted gross income. First, she argues that the trial court erred in including as part of her income the $46,365.33 that she withdrew in 1998 from the Betty Kern Family Trust. Betty contends that the purpose of the trust is not for her day-to-day expenses, *197 but is, rather, for her retirement and the children's college education.
Our review of the trust instrument reveals that Betty, as trustee, may withdraw such amounts from the trust to provide for her and her children's support "in their accustomed manners of living and for their maintenance, health and education." The record also reveals that Betty withdrew $46,365.33 from the trust to pay half of the down payment on a new home she purchased with her current husband, and to renovate/redecorate the home.
Louisiana Revised Statute 9:315(4)(a) defines gross income as income derived from any source, including trust income. The trial court made the factual finding that Betty derived income from the trust. It also determined that the terms of the trust allowed Betty to withdraw funds at her discretion to support her children. Compare, Bulluck v. Bullock, 98-0263, p. 8 (La.App. 4 Cir. 8/19/98), 719 So.2d 113, 117 (Wife's IRA earnings were not included in gross income because funds were not available to her.); Jones v. Jones, 628 So.2d 1304, 1306 (La.App. 3 Cir. 1993)(Wife had no access to money in estate planning agreement, although the accumulated interest, dividends, etc., were taxed as her income.). The trial court stated in its reasons for judgment that because Betty has absolute discretion to utilize the trust funds at any time and for whatever purpose she deems appropriate, it would not impute the total $46,365.33 to Betty, but, rather, impute $25,000 to her as either available funds to reduce her monthly living expenses or to be used for the benefit of the minor children. We find no abuse of the trial court's discretion.
5) Betty next argues that the trial court erred in imputing $42,513 of dividends and interest to her. The trial court reasoned that, based on the expert testimony of Melo Nix, the trust funds could be better invested, and thus yield higher dividends and interest. Ms. Nix testified that if the monies were invested in treasury bonds, which were earning 5.5% interest at the time of trial, the account could earn approximately $70,000 per year. The $42,513 imputed by the trial court reflects the excess dividend and interest income that could be earned if monies were invested in treasury bonds.
We find no statutory or jurisprudential support for the trial court's imputation of income to Betty for "undermanaging" the trust fund. While the law is clear that a parent may not be voluntarily unemployed or underemployed to avoid payment of support, and any amount deemed to be potential income shall be imputed to him, La.Rev.Stat. 9:315.9, 9:315(6)(b), the law is not clear as to whether a parent can have income imputed to him because he failed to invest available monies in higher yield accounts.[3]
Although Ms. Nix testified that treasury bills would yield a higher rate of return than currently being earned, no testimony was elicited concerning risk or liquidity factors. Thus, based on the record and the lack of statutory or jurisprudential support for the court's ruling, we find it was an abuse of the trial court's discretion to impute excess yield income to Betty.
6) Betty also claims that the trial court erred in using both her retirement funds and trust corpus to impute income to her. We find no basis in the record for this assignment of error.
*198 7) In her last assignment of error relative to the calculation of her income, Betty claims that the trial court erred in determining that she benefited from expense sharing with her current husband, Edward Smith. She claims that the uncontroverted testimony given by her and Mr. Smith proved that she pays all expenses related to her separate property, and that Mr. Smith pays his own expenses. However, it was also revealed that Mr. Smith, at the time of trial, was paying the entire note on the couple's new home. Betty explained that she intended to reimburse Mr. Smith for half of the notes once she sold her previous house, which she acquired in the community property settlement with Jay.
As stated in its reasons for judgment, the trial court concluded that Betty received substantial benefits from the expense-sharing arrangement with Mr. Smith, thereby directly reducing her actual living expenses. The court noted that if Betty lived alone, she would have to pay the entire note on the home she was in the process of selling, the entire note of the house she had just purchased, plus all household expenses. The court concluded that the value of the expense-sharing was approximately $2,600 per month, or $31,200 annually.
Louisiana Revised Statute 9:315(6)(c) provides:
The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of the party's actual expenses. (emphasis added)
The language of the statute is permissive, not mandatory. As such, it is within the trial court's discretion to include or disallow alleged expense-sharing benefits. Pendergrass, 94-1165, 94-1629 at p. 9, 667 So.2d at 1218. The record contains sufficient evidence to support the trial court's decision to include in Betty's income the value of the benefits she derives from expense-sharing.
Betty also asserts that the trial court erred in failing to consider the lifestyles, expenses and needs of the children in its calculation of support. Betty claims that both she and Jay testified regarding tuition expenses of the children, vacation habits, medical expenses and religious needs of the children. The court found that Betty offered no proof that the children's reasonable and necessary expenses exceeded the guideline maximum for two children. See, Rosenbloom v. Rosenbloom, 94-1762, p. 7 (La.App. 4 Cir. 4/26/95), 654 So.2d 877, 881, writ denied 95-1320 (La.9/1/95), 658 So.2d 1266. To accommodate for the extraordinary expenses of the two children, the court ordered that the additional expenditures on behalf of the children be split between the two parents. The court ruled that the mandatory addons to be split between the parties were basic school tuition and registration, all expenses billed by the school for mandatory items necessary for the children's education and continued enrollment in the school, extraordinary medical expenses as defined by statute, and the cost of a health and hospitalization premium for the children.
Louisiana Revised Statutes 9:315.3 through 9:315.6 provide items which may be added-on to the basic child support obligation: child care costs, health insurance premiums, extraordinary medical expenses, expenses for attending a special or private school, and expenses for transportation of the child from one party to the other.
*199 Both the father and mother have the obligation to support the children of the marriage. Child support should be granted with consideration for the needs of the children, and the circumstances of the parents. Rosenbloom, supra, 94-1762 at pp. 4-5, 654 So.2d at 879. The court below found that each party was equally capable of supporting the children in the lifestyle to which they were accustomed. Further, because the combined adjusted gross income of the parties exceeded the highest level specified under the guidelines, the trial court had vast discretion in setting the amount of child support. We will not upset the trial court's judgment absent an abuse of that discretion.
In her final assignment of error, Betty avers that trial court erred in not deviating from the support guidelines. As stated above, we find no abuse of the trial court's discretion in calculating the support obligation.

B. JAY KERN'S ANSWER TO APPEAL:
Jay claims that the trial court erred in determining that he and Betty's adjusted gross income was equal. The trial court determined Jay's income to be approximately $116,000 and Betty's to be $177,565. Jay claims, however, that the trial court determined that their income was approximately equal because it "wrote off" the approximately $46,000 she withdrew from the trust as a one-time capital expenditure. In its reasons for judgment, the trial court stated that it would not impute as income to Betty the total $46,000 she withdrew from the trust because the court recognized this as a onetime capital expenditure. However, the court did impute $25,000 to Betty because she could use the trust funds at her discretion to benefit the children and herself.
Jay argues that even excluding the $46,000, Betty's income still exceeded his by approximately $15,000. Therefore, their income was not equal and their pro rata share of child support should not have been split equally.
First, because we have deducted the $42,513 imputed to Betty for interest and dividends, and have determined that the trial court did not "write off" the entire $46,000 of the 1999 withdrawal, but, rather, imputed $25,000 to Betty, Betty's adjusted gross income is $113,687. Further, we agree with the trial court that the proper adjusted gross income for Jay was $116,346. The trial court stated in its reasons for judgment that it found application of the guidelines not to be in the best interests of the children, and that application would be inequitable because both parties had sufficient income to maintain the children. The court further held that all add-on expenses would be split equally. Implicit in these findings is the court's reasoning that either party was fully capable of supporting the children, and, therefore, all expenses should be shared equally. This finding, coupled with our recalculation of Betty's adjusted gross income, renders this assignment of error without merit.
Lastly, Jay claims that the trial court erred in not granting his motion for reimbursement. The judgment is silent on this issue. Although the reasons for judgment state that the motion is dismissed, the actual judgment from which this appeal is taken does not mention it. An appeal is taken from a final judgment rather than from written reasons. Levron v. State through Dept. of Health & Hospitals, 94-2094, p. 7 (La.App. 4 Cir. 4/24/96), 673 So.2d 279, 285, writs denied, 96-1684, 96-1723 (La.10/4/96), 679 So.2d 1387, 679 So.2d 1391. Accordingly, this issue is not properly before this Court.
*200 For the reasons assigned above, we amend the trial court judgment insofar as it imputed $42,513 to Betty as excess yield income, and affirm in all other respects.
AMENDED, AND AFFIRMED AS AMENDED.
NOTES
[1] Because Betty Kern has remarried, we will refer to the parties as Betty and Jay, for ease of reference.
[2] The trial court ultimately determined that Jay's adjusted gross income was approximately $116,000.
[3] In a community property case, the Third Circuit refused to include as a fiduciary duty the requirement that a former spouse invest community funds in interest-bearing accounts. See, Fastabend v. Fastabend, 606 So.2d 794 (La.App. 3 Cir.), writ denied, 609 So.2d 231 (La.1992); Barbin v. Barbin, 546 So.2d 609 (La.App. 3 Cir.1989).