35 So.3d 1152 (2010)
Debra L. LEARD
v.
William F. SCHENKER, Jr.
No. 2009-CA-1438.
Court of Appeal of Louisiana, Fourth Circuit.
March 24, 2010.
*1153 Debra L. Leard, Baton Rouge, LA, In Proper Person, Plaintiff/Appellant.
Robert C. Lowe, Marynell L. Piglia, Lowe Stein Hoffman Allweiss & Hauver, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge JAMES F. McKAY, III, Judge EDWIN A. LOMBARD, Judge PAUL A. BONIN).
EDWIN A. LOMBARD, Judge.
This appeal in the ongoing custody dispute between the parents of the minor *1154 child, G.L., is from the June 5, 2009, judgment on the plaintiff's Rule to Modify Visitation. After review of the record and arguments of the parties in light of the applicable law, we affirm in part and reverse in part.

Relevant Facts and Procedural History
The child, G.L., was born on March 27, 1995, to the plaintiff, Debra Leard, and the defendant, William Schenker, Jr. The parents, who were not married, initially entered into a joint custody agreement in November 1995 but, subsequently, custody and visitation has been heavily litigated. See, e.g., Leard v. Schenker, XXXX-XXXX (La.7/11/08), 986 So.2d 66; Leard v. Schenker, XXXX-XXXX (La.7/11/08), 983 So.2d 1286; Leard v. Schenker, 2006-2589 (La.11/17/06), 942 So.2d 544; Leard v. Schenker, XXXX-XXXX (La.9/1/06), 936 So.2d 190; Leard v. Schenker, XXXX-XXXX (La. App. 4 Cir. 3/22/06), 930 So.2d 75, reversed in part, XXXX-XXXX (La.6/16/06), 931 So.2d 355.
In May 2002, after a seven day trial, the trial court issued a judgment granting sole custody to the defendant, temporarily suspending the plaintiff's visitation rights for a six week period to be followed by conditional supervised visitation. The May 2002 judgment provided that if the plaintiff remained in active mental health treatment for six consecutive months in compliance with a treatment plan, unsupervised visitation would be considered by the court. This judgment was not appealed. In August 2002, the trial court determined that it was in G.L.'s best interest to have supervised visits with his mother one hour per week. Custody and visitation issues continued to be heavily litigated by the parties, but the weekly one-hour mother-son visits remained the status quo until the instant litigation.
The plaintiff filed the motion to modify visitation underlying this appeal on July 12, 2006. On December 13, 2006, the trial court appointed Rafael Salcedo, Ph. D., to perform a mental health evaluation to determine whether the plaintiff's visitation with her child should be modified. On June 19, 2008, on motion of the defendant, the trial court ordered the plaintiff to undergo a further evaluation by Brian Jorn, Ph.D. The motion hearing finally came to trial in 2009 over a three day period, May 20, May 29, and June 1, 2009. The trial court rendered judgment on June 5, 2009, changing the plaintiff's visitation with her son from supervised to unsupervised but temporarily suspending all visitation for a six month period during which twice weekly telephone contact would be allowed twice although G.L. was not required to speak to his mother. In addition, the defendant and his wife were required to notify G.L. that his mother was on the phone and encourage him to speak to her.
Both parties appeal this judgment.

Applicable Law
In child custody cases, appellate courts will not disturb an award of custody absent a manifest abuse of discretion in the trial court. See Revision Comments-1993 to La. Civ.Code art. 134, Comment (b). In Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986), the Louisiana Supreme Court described the appellate review standard by stating that "upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review in the absence of a clear showing of abuse." Id. at 1196.

Plaintiff's Pro Se Assignment of Errors
In her first assignment of error, the plaintiff asserts that the trial court erred in denying reasonable visitation to the non-custodial parent in accordance with the best interest of the child standard. She contends that because her fitness as a *1155 parent was established in 7 years of supervised visitation and the hearing testimony established that she was not psychologically unfit, it is unjustifiable to limit her to telephone contact with her son. The plaintiff concedes that her child is alienated from her but argues, in essence, that forcing the child to have a relationship with her is in the child's best interest. Under the circumstances of this case, we do not find that the trial judge abused his discretion in temporarily establishing a six month interval of telephone contact as a transition from supervised visitation to unsupervised visitation.
In her second assignment of error, the plaintiff contends that the trial court erred in not formulating an intervention plan prohibiting alienation by the custodial parent to the non-custodial parent. The plaintiff asserts that the child was alienated after the father was awarded sole custody and, thus, this argument apparently relates back to the May 2002 judgment and is not properly before the court in this appeal. The plaintiff also suggests that because the child is alienated, custody should be transferred to her. Because the issue below was visitation and not change of custody, this issue is also not properly before us.
In her third assignment of error, the plaintiff argues that alienating the child is emotional abuse and that the trial court erred in not placing the child in therapy. As a basis for this argument, she asserts that the defendant ruled her into court on June 17, 2008, to obtain a mental health evaluation of her but, instead, all parties were evaluated except for the defendant's wife. The plaintiff also asserts that (1) the child's open hostility and confrontational behavior with her indicates that he is not thriving in the sole custody of his father; (2) his "behavior is a cry for help that the District Court should have heard"; (3) "something must be done to stop the Appellee from promoting ongoing alienation tactics, culpable with his wife, rehearsing the child against his mother; and (4) "because the child was left in an alienating environment of the sole custody of the Appellee, the child is completely helpless to `develop' a relationship with his own mother." Again, it is unclear whether this issue arises out of the May 2002 judgment awarding sole custody to the father or a ruling on June 17, 2008, but, in any event, it clearly is not related to the June 2009 judgment underlying this appeal. Accordingly, this assignment of error is meritless.
Finally, in her fourth assignment of error, the plaintiff argues that the trial court erred in not considering interference to visitation as grounds to modify visitation. In support of this assignment of error, the plaintiff refers to a scheduled visit where the child was not available due to a miscommunication as to the time and date of a visit between the supervising counselor and defendant, the defendant's arrest for DWI, the registration of the child at school under the name Schenker rather than Leard, an incident where the defendant yelled at her in the court parking lot, and the defendant's attempt to have her held in contempt of court on April 16, 2009, for missing school tuition payments.
In the June 2009 judgment before the court, visitation was modified to provide for unsupervised visitation after a transitional six month period of telephone contact. We find no error in this modification and, accordingly, find this assignment of error to be without merit.

Defendant's Assignments of Errors
The defendant enumerates four assignments of error. He contends that (1) the trial court erred in ordering the plaintiff into treatment with Dr. Fontenelle, who *1156 she consulted 13 years ago but who has never treated her; (2) the trial court erred in declaring that he has not facilitated the relationship between the plaintiff and her son because as the parent with sole custody he has no duty to facilitate that relationship; (3) because the trial court erred in ordering him to pay for six months of cognitive therapy for the plaintiff based on its finding that the defendant did not facilitate the mother-son relationship; and (4) the trial court erred in granting the plaintiff twice weekly telephonic contact for six months between 9 am and 8 pm and should have ordered a specific time because the child is generally in school or camp between 9 and 3 and given the highly contentious history of the case.
The defendant argues that because he has sole custody rather than joint custody, he has no duty to exchange information or confer with her in exercising decision-making authority and therefore there is no duty to facilitate a relationship between mother and child. Accordingly, the defendant argues that the trial court erred as a matter of law when it imposed a non-existent duty on the defendant. Alternatively, he argues that there is no evidence that he has not facilitated the relationship and, in any event, the child does not think that the plaintiff facilitated a positive father-son relationship. Accordingly, the defendant argues that the trial court erred in ordering him to pay for six months of cognitive therapy for the plaintiff.
Whether there is a clearly defined duty to facilitate a mother-son relationship by the custodial father, common sense would suggest that to do so would be in the best interest of the child. However, because we do not find the father's failure to facilitate the relationship a basis for ordering him to pay for the plaintiff's mental health therapy, we find that the trial court erred in ordering the defendant to do so and reverse this part of the judgment. Because the defendant is not financially responsible for the plaintiff's mental health treatment, we do not address his assignment of error pertaining to Dr. Fontenelle.
Finally, we find no merit in the defendant's argument that the trial judge should have ordered a designated time for telephone contact between mother and son. The trial judge did not abuse his discretion in providing reasonable parameters rather than specific times for telephone contact during the transitional period between supervised and unsupervised visitation.

Conclusion
For the foregoing reasons, we affirm the judgment in part, reversing that portion which orders the defendant to pay for the plaintiff's mental health therapy.
AFFIRMED IN PART; REVERSED IN PART.
BONIN, J., Concurs With Reasons.
BONIN, J., Concurs With Reasons.
I respectfully concur in the result.
The trial court previously determined from clear and convincing evidence that the best interest of this young man, now 15 years old, was served by the award of sole custody to his father. La. C.C. art. 132; see also Leard v. Schenker, 05-1125 (La. App. 4 Cir. 3/22/06), 930 So.2d 75.
I write separately to highlight La. C.C. art. 136 A which provides:
A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights, unless the court finds, after a hearing, that visitation would not be in the best interest of the child.
The factors for determining the best interest of the child are set forth in La. C.C. *1157 art. 134. These factors are applicable to the determination of visitation as well as custody, but in the context of the appropriate proceeding. See, e.g., Acklin v. Acklin, 29, 193 (La.App. 2 Cir. 2/26/97), 690 So.2d 869.
In matters of visitation, the trial court is vested with much discretion, and we will not disturb its findings absent an abuse of discretion. Pendergrass v. Pendergrass, 94-1165 (La.App. 4th Cir.1996), 667 So.2d 1213, 1217. Here the trial judge lifted the requirement that the mother's exercise of her visitation rights be supervised, but at the same time temporarily suspended the exercise of visitation (other than telephonic contact) by her conditioned upon her obtaining "cognitive behavioral therapy" by a designated psychologist.
Moreover, the trial judge was intent on rebuilding the mother-son relationship. During the hearing the mother had given some limited acknowledgement, short of a full appreciation, that persistent litigation with her son's father (with its concomitant subjection of the young man to psychological probing which he detested) and forced visitation with her teenage son could be counter-productive to such a rebuilding. This young man clearly expressed his preference that he did not want further visitation with his mother and the trial court may consider his preference when deciding whether to deny or limit visitation rights of a noncustodial parent. See La. C.C. art. 134(9) (listing among the factors that the trial court can consider in determining the best interest of the child: "[t]he reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.") See also Maxwell v. LeBlanc, 82-1801 (La.1983), 434 So.2d 375, 378. Considering that the judgment only ordered a conditional suspension of her visitation rights, the mother, it seems to me, should have prudently returned to the district court to show her compliance with the reasonable requirements of the judgment instead of submitting the resolution of her motion to modify visitation to the unavoidable delays of the appellate process, which have already exceeded the period of the temporary suspension.
Turning now to the father's assertion that he has no legal affirmative duty to facilitate the relationship between his son and the mother. I agree that there is no such duty which could justify condemning him to pay for the mother's treatment. While he may not be affirmatively required to "facilitate" the mother-son relationship, we are reminded that he is obliged not to interfere with it unless for good cause. La. C.C. art. 136.1 provides:
A child has a right to time with both parents. Accordingly, when a court ordered schedule of visitation, custody, or time to be spent with a child has been entered, a parent shall exercise his rights to the child in accordance with the schedule unless good cause is shown. Neither parent shall interfere with the visitation, custody or time rights of the other unless good cause is shown. (emphasis added.)
I also agree the trial court erred in ordering him to pay for Ms. Leard's six months of therapy. The trial court did not express legal authority for this order and I have found none. The court may order one party to pay the costs of a mental health evaluation of the other party for use at a visitation proceeding. La. R.S. 9:331 A. This provision, however, does not extend to ordering the costs of one party's treatment to be paid by the other. These costs might be countenanced had they been considered in an award of support for the young man himself, see generally La. C.C. arts. 141, 227, or as part of a determination of final or interim spousal support, see La. C.C. art. 112 et seq. The father, *1158 however, has sole custody of the young man and was never married to the mother. Accordingly, I agree that there is no legal basis upon which the trial court may assess the costs of the mother's court-mandated therapy to the father.
I, therefore, concur.