| .SUSAN M. CHEHARDY, Judge.
In this matter, the trial judge granted Jeanie Clark’s request for an increase in child support for her daughter, Amanda Clark. On appeal, Jeanie Clark seeks a further increase in child support from Amanda’s father, Reymundo Ruiz. For the following reasons, we affirm the trial court judgment in part, vacate in part, and remand for further proceedings.
On June 1, 1989, Amanda Clark was born to Jeanie Clark(“Clark”) and Rey-mundo Ruiz(“Ruiz”). In a divorce decree rendered on June 13, 1994, Ruiz agreed that Clark would have “sole legal and physical custody” of Amanda and that he would get visitation with Amanda one weekend per month. Ruiz was ordered to pay child support of $50.00 per week and one-half of the medical-insurance premium and deductible for Amanda.
On November 29, 2001, Clark and Ruiz consented to a change in domiciliary status, in which the parties agreed to joint custody with Ruiz as domiciliary parent for the school year and Clark as the domiciliary parent for the 13summer months. The record of that agreement indicates that the “interim living arrangement” would last until June 30, 2002.[1] Lastly, the parties agreed that Ruiz would not owe child support during the months that Amanda lived with him.
On November 13, 2003, in light of the fact that the Louisiana Department of Social Services was providing Jeanie Clark with support enforcement services, the Jefferson Parish District Attorney’s Office filed an ex parte motion to change the payee on the child support order to the Louisiana Department of Social Services and transfer the child support order to the *517 Juvenile Court for the Parish of Jefferson, which the trial judge granted. On February 13, 2004, the State of Louisiana, Department of Social Services filed a Rule to Increase Child Support on the basis that the needs of the child have increased. The hearing was set for March 15, 2004 before a hearing officer.
On March 15, 2004, pursuant to an order from the Juvenile Court, both parties presented W-2’s for 2003. Clark’s W-2 revealed a yearly gross income of $12,000.00, or approximately $1,000.00 per month. Ruiz’s W-2 revealed a yearly gross income of $28,320.00, or approximately $2,360.00 per month. Further, Ruiz presented Amanda’s school record reflecting her enrollment in the seventh grade in Houston beginning December 10, 2001 through the completion of eighth grade and promotion to ninth grade in 2003. Ruiz also presented his W-2’s from 2002 and 2003, which reflected that child support totaling $2,400.00 had been deducted pursuant to a wage . assignment from his paychecks. Neither party presented federal or state income tax returns for either 2002 or 2003.
On March 15, 2004, after reviewing the parties’ financial information, the Department of Social Services recommended that support be increased and set for |4$355.00 per month. Clark disagreed with the award recommendation and requested a hearing.
At the March 15, 2004 conference with the hearing officer, Clark argued that the increase was not sufficient to “raise a teenager.” Clark stated that Amanda would like to have a cellular telephone and take dance classes but Clark cannot afford those expenses. Clark stated that her “baby’s father,” who makes $50,000.00 per year pays $500.00 per month in child support. Clark further argued that Ruiz’s current wife “writes the Houston Chronicles” and is paying “all of [the Ruiz’s] bills.”
At the hearing, Ruiz stated that Amanda was one of four people currently covered by his family’s health insurance through his current wife’s employer. He testified that the premium is $269.00 per month. The hearing officer then calculated the premium for Amanda as one-quarter of the total or $67.25. Importantly, Ruiz agreed during the hearing to continue paying Amanda’s entire health insurance premium and agreed to pay increased child support of $355.00 per month. Ruiz did request a credit for the child support that was deducted from his wages during 2002 when Amanda resided with him. Finally, Ruiz admitted that, as of the date of the hearing, he was in arrears on his child support obligation at least $1,400.00.
That day, the hearing officer found that Ruiz was not underemployed, declined to consider expense sharing in this case, and re-calculated the child support obligation to include a credit to Ruiz for paying Amanda’s entire insurance premium. The record contains a print-out of a child support obligation worksheet, which reflects the hearing officer’s calculation of Ruiz’s child support, including court costs, as $350.69.
| sClark again disagreed with the recommendation and sought a hearing with the Juvenile Court judge. During that hearing, the prosecutor stated that Department of Social Services and the hearing officer recommended that support be set at $355.00 per month. Clark reiterated the arguments that she had made before the hearing officer. After reviewing the parties’ financial situation, Judge Konrad accepted the hearing officer’s recommendation.
That same day, Judge Keller signed an order that the hearing officer’s recommendations be made the order of the Juvenile *518 Court. We note that the hearing officer’s “Family Support Order Recommendation,” which was made the order of the Juvenile Court and appears in the record, is inconsistent with the evidence presented at the hearing and on appeal.
According to the “Family Support Order Recommendation” found in the record, the hearing officer agreed that child support should be increased but found that Ruiz should be credited $4,808.00, including $2,808.00 for “the time the child resided with ... him during the 2001-02 and 2002-03 school years” and $2,000.00 in “child support withheld from his check in 2000 while the child resided with him in Texas.” The hearing officer further found that, as of March 15, 2004, Ruiz’s overpayment was $3,258.00. There is no reference to the amount of the arrearage that Ruiz admits as of that date or of a calculation of the actual amount of arrearage on that date. Further, the document reflects that the “hearing officer recommends an increase to $233.99 + cc/mo.”
On appeal, Clark raises seven assignments of error: first, the trial court erred in adopting the recommendation of the Hearing Officer relating to the amount by which monthly child support should be increased; second, the trial court erred in adopting the recommendation of the Hearing Officer that Reymundo Ruiz be granted a monthly credit in the calculation of child support in the amount of $67.25 [ fifor the alleged cost of health insurance for the minor child; third, the trial court erred in adopting the recommendation of the Hearing Officer as relates to the increased amount of child support which deviated from the guidelines set forth in La. R.S. 9:315; fourth, the trial court erred in adopting the recommendation of the Hearing Officer granting unto Reymundo Ruiz a credit in the amount of $3,258.00 for an alleged overpayment of child support; fifth, the trial court erred in adopting the recommendation of the Hearing Officer which failed to consider the admission of Reymundo Ruiz that at the time of the hearing he was in arrears in past due child support in the amount of $1,400.00; sixth, the trial court erred in refusing to permit the introduction of evidence or to consider that the current spouse of Reymundo Ruiz pays some of Reymundo Ruiz’s living expenses; and seventh, the trial court erred in adopting the recommendation of the Hearing Officer when rendering a Judgment which was not supported by the evidence or by existing law and statutory authority. We note that the other parties have not appealed or filed briefs seeking review of the recommended increase in the child support award in this case. Accordingly, the only issue for review is the amount the child support award should be increased in this case.
The standard of appellate review of factual findings in a civil action is a two-part test: (1) the appellate court must find from the record there is a reasonable factual basis for the finding of the fact finder, and (2) the appellate court must further determine the record establishes the finding is not clearly wrong (manifestly erroneous). Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Factual findings should not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the trial court’s “findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse.... ” Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). 17Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). A trial court’s child support order will not be *519 reversed except for abuse of discretion. Hogan v. Hogan, 549 So.2d 267, 271 (La.1989).
First, we will address Ms. Clark’s contention as presented in her first, third and seventh assignments of error that the trial court erred in adopting the hearing officer’s recommendation or, more specifically, the amount of the child support ordered. Our review of the child support obligation worksheet prepared by the hearing officer during her meeting with the parties reflects that her recommended child support order was 333.99 per month plus 5% court costs per month. Thus, “$233.99” appears to be a typographical error. We thus order that typographical error corrected to reflect the recommended child support order of $333.99. We order that correction is effective retroactive to the date of the support and order payment of any child support owed from that date.
Our review of the record reveals further problems. In any proceeding to modify child support, the Child Support Guidelines are to be used. La. R.S. 9:315.1(A). The guidelines mandate that each party provide the Court with proof of his or her income. La. R.S. 9:315.2(A) states:
Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings. Suitable documentation of current earnings shall include but not be limited to pay stubs, employer statements, or receipts and expenses if self-employed. The documentation shall include a copy of the party’s most recent federal tax return. A copy of the statement and documentation shall be provided to the other party. [Emphasis added.]
In cases where the record contains inadequate information and documentation upon which to make a child support determination under the ^guidelines, a remand to the trial court is necessary. Inzinna v. Acosta, 623 So.2d 1357, 1359 (La.App. 5th Cir.1993). If there is sufficient evidence in the record to render a decision in the case, remand is unnecessary even if some of the required documentation is lacking. State on Behalf of Taylor v. Thomas, 93-1039 (La.App. 5 Cir. 6/28/94), 639 So.2d 837, 839.
In the present matter, neither party presented any federal income tax statements. La. R.S. 9:315.2(A) mandates that each party include their most recent federal income tax return as part of their verified income statement. Accordingly, we order a hearing to, recalculate the child support award after both parties submit suitable documentation to verify their income statement including, but not limited to, copies of their most recent federal tax return.
Further, Clark challenges the credit of-$67.25 per month for Amanda’s health insurance premium. We. agree. The record is devoid of documentation of the current health insurance premium and the actual payor of said premium. Accordingly, we find that the trial court improperly credited Ruiz for this payment. We order that Ruiz’s credit shall be disallowed retroactive to the date of the child support order unless Ruiz offers proof that he is paying for Amanda’s health insurance premium.
Finally, we must correct the credit against future child support payments awarded to Ruiz. The hearing officer found that Ruiz should be credited $4,808.00 based on her finding that Ruiz would have received $2,808.00 in child support credit for time that Amanda lived with him and $2,000.00 for child support deducted from *520 his wages during “2000.”[2] Clark concedes, and we agree, that Ruiz presented sufficient documentation to justify granting credit for $2,000.00 in child [asupport payments made while Amanda lived with him in 2002. Thus, we affirm the credit of $2,000.00 for overpayment in 2002.
We cannot agree, however, that Ruiz should also receive a credit of $2,808.00 on the basis that Amanda lived with him. In essence, the $2,808.00 credit is tantamount to a child support award to Ruiz from Clark for the period that Amanda lived with Ruiz. First, according to the record before us, Ruiz has never sought child support from Clark so Louisiana law does not allow a judgment awarding child support prior to judicial demand. La. R.S. 9:315.21. Further, Clark and Ruiz agreed that “child support would not be paid” during the interim living arrangement that began at the end of 2001.
Moreover, we cannot see how the hearing officer could have properly calculated Ruiz’s credit for overpayment when the record is unclear as to the date that Amanda returned to live with her mother or the actual amount of Ruiz’s arrearage as of March 15, 2004, which are necessary facts in determining Ruiz’s credit for overpayment. We vacate the hearing officer’s calculation of Ruiz’s overpayment credit, except for the $2,000.00 overpayment in 2002, and order the parties to submit suitable documentation of the date that the “interim living arrangement” ended and the actual amount of Ruiz’s arrearage on the date of the child support order.
Finally, in her last assignment of error, Clark argues that the trial court erred in refusing to consider evidence of Ruiz’s expense-sharing. La. R.S. 9:315 C(5)(c), which discusses expense-sharing, reads in pertinent part:
The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party’s actual expenses.
[min this case, Clark did not produce evidence of any marriage, or of the income of any such spouse, or the extent to which the alleged spouse’s income reduced Ruiz’s costs or obligations. Further, the language of the statute is permissive, not mandatory. It is within the discretion of the trial court to include or disallow such alleged “benefits.” State v. Holland, 99-143 (La.App. 5 Cir. 6/30/99), 738 So.2d 721, 722 -723; Pendergrass v. Pendergrass, 94-1165 (La.App. 4th Cir.1/26/96), 667 So.2d 1213. Considering the record in this case, we cannot say the trial court abused its discretion at the hearing in question. We note, however, that Clark is not precluded from introducing evidence of Ruiz’s marriage, his spouse’s income, or its potential reduction of his costs or obligations at a subsequent hearing.[3]
For the foregoing reasons, we affirm the trial court’s ruling granting an increase in *521 child support. We amend the March 15, 2004 child support award to reflect $333.99 retroactive to that date and order payment of any child support owed pursuant to this order. We also vacate the trial judge’s order in so far as it accepted the hearing officer’s findings with respect to credit to Ruiz for health insurance premiums and overpayments, which were not supported by evidence. We remand for a hearing at which the parties may submit the necessary documentation to perform a proper recalculation of the child support award consistent with this opinion. Costs are to be split equally between Clark and Ruiz.

AFFIRMED IN PART, AMENDED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

. It appears, however, from the record that Amanda returned to Texas with her father for the 2002-2003 school year, also.

. Although the support order recommendation states that the overpayment occurred in 2000, we conclude that the record reflects that the overpayment actually occurred in 2002, when Amanda lived with her father.

. As noted above, Ruiz’s credit for paying for Amanda's health insurance premium is disallowed. We are not stating, however, that Ruiz is precluded from introducing proof that his current wife pays for Amanda’s health insurance premium.