909 So.2d 710 (2005)
STATE of Louisiana, In The Interest of the Minor Child, H.B., Plaintiff-Appellant
v.
Raymond BLAIR, Defendant-Appellee.
No. 40,140-JAC.
Court of Appeal of Louisiana, Second Circuit.
August 17, 2005.
Rehearing Denied September 15, 2005.
*711 Robert Randall Smith, Assistant District Attorney, for Appellant.
John W. Evans, Jr., Bossier City, for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
CARAWAY, J.
The State filed this support enforcement action to fix a support obligation upon a child's father before the ruling for custody of the child had been made in the parents' divorce proceeding. The subsequent custody ruling adopted the parents' voluntary equal sharing arrangement for the young child and did not designate the mother as the domiciliary parent. Additionally, immediately following the institution of this action the mother remarried a man earning $4,350/month. Under these circumstances, the hearing officer and trial court refused to fix a support obligation on the father and the State appeals. For the following reasons, we affirm.

Facts
In June 2003, Raymond Blair and Misty Blair were divorced in civil action Docket No. 110,811 in the 26th Judicial District Court. In that suit, the incidental child custody action (hereinafter the "Custody Proceeding") regarding the parties' 18-month-old daughter remained pending.
In July 2003, the State of Louisiana Department of Social Services ("State") filed the present action (Non Support Docket No. 14,007, 26th Judicial District Court) on behalf of Misty, seeking to obtain payment of child support from Raymond (hereinafter the "Support Enforcement Proceeding"). The State alleged that Misty was qualified to receive state support services from the Family Independence Temporary Assistance Program ("FITAP"). The record reflects that Misty presumably applied for FITAP sometime in March 2003.
Sometime before August 2003, Misty relocated with the child to Ft. Polk, in Leesville, Louisiana, and remarried. Her husband, Michael Nett, is in the Army and stationed there. Misty testified that her husband's gross monthly income was $4,350/month, and that she and her husband reached an agreement with Raymond to alternate claiming the child as a dependent exemption for income taxes. Although Misty was formerly employed as a casino dealer and a nursing assistant, she was unemployed at the time of the November 2004 hearing and described herself as a "full-time mother."
The hearing on the rule in the Support Enforcement Proceeding was delayed until matters were resolved in the Custody Proceeding. In that proceeding, Misty's relocation to Ft. Polk, her remarriage and her husband's income were all considered by the trial court. After the hearing on September 11, 2003, the district court entered an order pursuant to the parties' stipulation by which they agreed to split custody of their daughter on a 50/50 basis. The *712 record further indicates that there was agreement not to revisit the custody arrangement until the child reached school-age or to seek payment of support from either of the parents. Neither parent was designated as the domiciliary parent.
In May 2004, the State moved to set a support enforcement hearing on the grounds that "the child support issue will not be addressed in the civil matter in district court." Immediately prior to the hearing, Raymond moved to consolidate the Support Enforcement Proceeding with the Custody Proceeding and denied that Misty was the custodial parent. The district judge who was involved in both proceedings ordered the two cases consolidated on July 19, 2004.
Thereafter, the State's rule for support was scheduled to be heard before a hearing officer on November 9, 2004. Raymond testified that he was employed at Cellxion in Bossier City and earned $10.50/hour. Both parents testified that since August 2003, they split custody of the child two weeks on and two weeks off, and exchanged custody in Natchitoches. Based on this testimony, the hearing officer found that "[t]he parties share equally in their ability to earn and therefore no child support is owed based on the current custody matter." The State appealed this ruling to the district court.
At a hearing on the matter, the court in its oral ruling noted the equal custody arrangement agreed to by the parents. The court also noted the parents' equal earning capacities and their further agreement not to seek child support from either parent. The trial court then adopted the recommendation of the hearing officer and entered judgment dismissing the Support Enforcement Proceeding. It is from this judgment that the State appeals.

Discussion
Effective July 2, 2003, immediately before the filing of this Support Enforcement Proceeding, former La. R.S. 46:236.1 was repealed, and the new La. R.S. 46:236.1.1, et seq. took its place. Acts 2003, No. 1068. Accordingly, this action was brought by the Department of Social Services under the provisions of La. R.S. 46:236.1.2 which read, in pertinent part, as follows:
A. The department is hereby authorized to develop and implement a program of family support in FITAP cases, Title IV-E Foster Care cases, Medicaid only cases, and any other category of cases to which the state is required by federal law or regulation to provide services, designed to do the following:
(1) Enforce, collect, and distribute the support obligation owed by any person to his child or children and to his spouse or former spouse with whom the child is living if a support obligation has been established with respect to such spouse or former spouse.
* * *
(4) Obtain and modify family and child support orders.
* * *
D. (1) The department, except when it is not in the best interest of the child, may without the necessity of written assignment, subrogation, tutorship proceedings, or divorce proceedings take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for the purpose of fulfilling its responsibility under this Section, in any court of competent jurisdiction, to obtain an order, judgment, or agreement of *713 support against the responsible person in any case in which the department is providing services under this Subpart. The amount of such support shall be set only by order of the court or by the consent of the parties, but in either case the department shall be designated as payee. Additionally, the department may take direct action to modify an order or judgment of support, including actions to increase or decrease support, in any case in which the department is providing services pursuant to this Subpart. A separate and distinct cause of action in favor of the department is hereby created, and suits brought under this provision need not be ancillary to or dependent upon any other legal proceeding.
Though the action is "separate and distinct" from actions between parents to fix child support in divorce and custody proceedings, the courts have utilized the child support guidelines for determination of child support, La. R.S. 9:315, et seq. (hereinafter the "Guidelines"), in fixing the amount of support in actions by the State. State ex rel. Gilbert v. Gilbert, 34,203 (La.App.2d Cir.12/20/00), 775 So.2d 1182.
A case of importance for this decision is State ex rel. Gilbert, supra. There, the state filed a similar rule for child support against a father who had previously entered a voluntary joint custody agreement with the mother, who years later began receiving state assistance while attending school. The parties had agreed to share custody as equally as practicable although the father was shown to be providing a larger share of the time in caring for the child. Their agreement, like the present case, provided that neither party was to pay child support to the other. Under those circumstances, this court reversed an award of child support to the state on behalf of the mother. Of significance, citing Section 315.8(D)[1] of the Guidelines, the court observed that the mother had not in fact shown herself to be the domiciliary parent designated in the parties' prior divorce proceeding. Therefore, an obligation of support from the father to the mother was not imposed.
Initially, we note that the evidence in this case indicates circumstantially that Misty's status as a recipient of public assistance may well have changed immediately after the initiation of this action upon her remarriage. More importantly, there is a glaring absence of evidence by the State in support of its rule, demonstrating that it has authority to obtain an order for child support in this matter as a "case in which the department is providing services" under FITAP or any other family support program. Misty did not testify that she is receiving support. No personnel from the department testified at the hearing. No written certification from the department evidencing support assistance to Misty was offered. Cf. State ex rel. Jones v. Mallett, 98-1051 (La.App. 3d Cir.2/3/99), 737 So.2d 810, writ denied, 99-0639 (La.7/2/99), 747 So.2d 14. On that lack of evidence alone, the trial court's judgment may be affirmed.
Additionally, the trial court was justified in its rulings both in the Custody Proceeding concerning the sharing of *714 physical custody of the child and in this Support Enforcement Proceeding. Before the State's action and its involvement in establishing a support obligation, the trial judge was faced with the pending matter of custody. The award of custody is made in accordance with the best interest of the child. La. C.C. arts. 131 and 134. Notably, the custody ruling is a separate "best interest of the child" assessment with which the State's support enforcement authority is not involved. The department is prevented under La. R.S. 46:236.1.2(D)(1) from obtaining a child support order "when it is not in the best interest of the child."
Here, the trial court made a best interest determination in the Custody Proceeding to accept the parties' agreement to equally share custody of the young child and to avoid the conflict involved in litigating that matter. A contested custody ruling may have resulted in Raymond's designation as domiciliary parent, extended periods of primary custody in Raymond's favor, and payment of a support obligation by Misty to Raymond. See State ex rel. Gilbert, supra. This was avoided by the parties' stipulated agreement for custody. The State's interest for support enforcement was subject to this initial custody determination, which is not contested by the State in this action as being against the best interest of the child.
When the issue of a support obligation is reached, the State argues that the trial court's ruling ignores Section 315.11(A) of the Guidelines concerning Misty's care for the child who is under the age of five. That provision states:
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years.
La. R.S. 9:315.11(A). Another provision of the Guidelines, however, which also has a bearing on this case is the definition for income in Section 315(C)(5)(c) which takes into consideration the income of another spouse. That provision provides:
The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses.
La. R.S. 9:315(C)(5)(c).
Both of the above provisions of the Guidelines no doubt were utilized in the deliberations of the trial court in approving the custody arrangement and refusing the imposition of a support obligation. The record is very weak on the facts which the court initially considered in the Custody Proceedings. Yet, the trial court's discretion in employing these Guidelines is given much weight. Curtis v. Curtis, 34,317 (La.App.2d Cir.11/1/00), 773 So.2d 185; State, Dept. of Social Services ex rel. Clark v. Ruiz, 04-1064 (La.App. 5th Cir.2/15/05), 898 So.2d 514. Accordingly, we will not disturb the trial court's discretionary ruling on this record.
The judgment of the trial court rejecting the State's action to establish a support obligation is affirmed. Costs of $118.50 are assessed against the State in accordance with La. R.S. 13:5112.
AFFIRMED.
*715 APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, CARAWAY, and DREW, JJ.
Rehearing denied.
NOTES
[1] La. R.S. 9:315.8(D) provides: The party without legal custody or nondomiciliary party shall owe his or her total child support obligation as a money judgment of child support to the custodial or domiciliary party, minus any court-ordered direct payments made on behalf of the child for work-related net child care costs, health insurance premiums, extraordinary medical expenses, or extraordinary expenses provided as adjustments to the schedule.