946 So.2d 305 (2006)
STATE of Louisiana DEPARTMENT OF SOCIAL SERVICES OFFICE OF FAMILY SUPPORT in the Interest of C.C.H. and K.D.H., Minor Children of Dianna Jones, Plaintiff-Appellant
v.
Terry HAWKINS, Defendant-Appellee.
No. 41,646-JAC.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2006.
The Malone Law Firm, LLC by Mary E. Winchell, for Appellant/Intervenor, Dianna Jones.
Office of Family Support by Rudy W. York, J. Schuyler Marvin, District Attorney, for State of LA, Dept. of Social Services.
Terry Hawkins, In Proper Person.
Before BROWN, GASKINS and CARAWAY, JJ.
CARAWAY, J.
This action by the Department of Social Services successfully established the paternity of an assisted child and imposed the support obligation on the delinquent father in 1998. In 2002, the father received an allowance from the court to "carry child on income tax" for every other year. In 2005, this dispute arose based upon the father's claim that the mother was interfering with his right to claim the dependency deduction for federal income taxes. Following a court-ordered tax audit, the trial court found that the father had lost $5,868 in the refunds because of the mother's actions and ordered that amount to be offset by accumulating the monthly child support payments of the father. The mother appeals the ruling. Finding inadequate proof and explanation of the father's tax losses, we reverse the trial court's ruling.

Facts
The State of Louisiana through the Department of Social Services ("DSS") initiated this support enforcement proceeding pursuant to La. R.S. 46:236.1.1, et seq., against Terry Hawkins ("Hawkins") in 1997, asserting paternity for two biological children of Dianna N. Jones ("Jones"). Paternity for the minor child, K.D.H., was excluded by DNA testing of blood samples. At an interim support hearing, the trial court signed a judgment of paternity acknowledging Hawkins as the natural father of C.C.H., born on December 13, 1992. Pursuant to the court order, monthly child support payments to the Twenty-Sixth *307 Judicial District Court Child Support Fund began in January 1998.
The initial pleading taking this action down a much different path was filed in May 2002 by Hawkins, in proper person. On a form pleading entitled, "Motion to Decrease Child Support," Hawkins moved the court as follows, with the italicized language as his handwritten claim:
The undersigned hereby moves to decrease his/her child support payments of $____ per month as set in a previous order, as there has been a substantial change of circumstances namely: To carry my daughter on my Income tax return.

The order signed by the trial court included with the motion directed notice to the DSS, through the District Attorney's Office, and to Jones as recipient of the support payments. Thus Jones, who was not technically a party to this action between the State and Hawkins, was purportedly made a defendant to Hawkins' rule to show cause.
After a hearing on Hawkins' motion, the hearing officer recommended that Jones continue claiming C.C.H. as her dependent. Hawkins appealed the ruling to the district court, praying for permission to claim the child at least for alternating years beginning in 2002. On July 22, 2002, the trial court ruled that Hawkins could claim C.C.H. for even years and Jones during odd numbered years.
In February 2005, Hawkins in proper person filed another "Motion to Decrease Child Support" using the same form. This time, Hawkins alleged a "substantial change in circumstances, namely: [Jones] still claiming child every year." The court order again directed service on the DSS and Jones.
The February 16, 2005 hearing excerpt in the juvenile docket minute entry showed the following:
Terry R. Hawkins, present. Dianna Jones, present. Tax review. Ms. Jones is to file amended tax return for 2002 and 2004. Father was to carry for those years. Copy of amended tax returns are to be sent to case worker Ilene Patrick.
The district court adopted the hearing officer's recommendations.
One month later, on March 23, 2005, Hawkins moved "to review her amended taxes," again using the standard "motion to decrease child support" form. The district court set the matter for hearing and ordered that the DSS, District Attorney and Jones be notified likewise. In response, following a hearing on June 22, 2005, the hearing officer made the following recommendation, confirmed by the trial court on June 28, 2005:
Court appoints Mike Wise if he accepts to review 2002 and 2004 tax returns.
The minute entry reflected "[r]eview taxes. Mike Wise is appointed to review taxes for 2002 and 2004. To bring to Tracie Ketchum in DA office within one week. Diana (sic) Jones advised that she owed money to Mr. Hawkins and it will be paid."
In response to this action by the hearing officer, Michael W. Wise, CPA (hereinafter "Wise"), reported to the court by letter dated August 23, 2005, as follows:
Pursuant to your request, we have prepared and enclosed copies of the corrected 2002 and 2004 Federal and Louisiana individual income tax returns for Mr. Terry Hawkins assuming a filing status of Head of Household with his daughter, [C.C.H.], claimed as a dependent eligible for the earned income credit.

*308 As a result, Mr. Hawkins is entitled to the following refunds or liable for the amount due.

 Federal Louisiana
 (Refund) Amount Due
2002 Individual Income
Tax Returns ($2,790) $125
2004 Individual Income
Tax Return ($3,078) $185

It appears that Mr. Hawkins paid income taxes on his original 2002 U.S. Individual Income Tax Return of $548, therefore this amount may need to be taken into consideration in addition to the $2,790 refund he was entitled to above.
In September 2005, the District Attorney as counsel for DSS moved by rule to show cause why Jones as custodial parent should not be ordered to pay Wise's professional fees. Additionally, the District Attorney prayed for further court review of the tax matter. At the hearing on rule in October, the hearing officer recommended the following:
Mother is to claim child as dependent in 2005 and future. Refix March 1, 2006 on tax issue.
This recommendation was adopted as the judgment of the district court on October 31, 2005, and Hawkins appealed immediately on the following grounds:
The mother of my child continue[s] carrying the child on her income tax return after I was appointed to carry the child, and also was told she would have to repay me for the years she carr[ied] the child.
In response, the appeal was heard before the district court and the minute entry therefor reports the following ruling:
Judge reinstated the original agreement whereby Ms. Jones is to claim odd years and Mr. Hawkins is to claim even years on State and Federal income tax. Ms. Jones to appear on 12/14/05 in non support Court to either agree with figures provided by the court appointed expert, Mike Wise, or disagree with said calculation by providing her own expert witness/accountant on said date or the court would find that she had interfered with Mr. Hawkins' claiming of the child as a dependent in the even numbered years and in question, that the calculations of Mr. Wise would be accepted as fact and that she would be found to owe those amounts to Mr. Hawkins. Judge further indicated he would direct the court to devise a means by which she would begin to pay Mr. Hawkins sums due to him beginning January 1, 2006.
The court-ordered hearing on December 14, 2005, is the first transcribed hearing in the record dealing with this tax dispute and was held before the hearing officer. As ordered by the trial court, Jones, in proper person, appeared with her tax preparer, Gail Cothern. Hawkins was also present in proper person, along with an assistant district attorney, and William Tilley, the support enforcement officer. Hawkins never questioned Cothern. Instead, she was cross-examined by the hearing officer. Jones was never instructed during the hearing that she could question Cothern.
In Cothern's testimony, she informed the court that she was "an enrolled agent with the IRS" and "qualified to testify before the IRS courts." She was later identified in the trial court's written ruling as "a tax preparer for H & R Block." In the questioning, the hearing officer never asked whether Jones had filed an income tax return for the year 2002 claiming C.C.H. as a dependent. Cothern expressed an opinion that Hawkins would be entitled to the dependency exemption for any tax year in which the court had withdrawn that right from Jones. However, she stated that Hawkins would not be *309 entitled to the earned income credit or other credits for such year's taxes.
The December 14 hearing likewise did not produce any evidence of Hawkins' 2002 tax return, which, according to Wise's report, needed correction. Additionally, although Hawkins claimed he was penalized by the IRS for his 2002 return, he produced no evidence thereof or any explanation for the penalty. Furthermore, when he was asked, Hawkins denied any personal knowledge of the penalty amount in 2002. He did admit that he was not penalized by the IRS for the year 2004. During the hearing, as the hearing officer and Jones requested that Hawkins produce such proof of the 2002 IRS penalty, Tilley, the support enforcement officer, offered that an entry in his records showed that Hawkins once claimed a penalty of $1,500 for 2002 taxes. Seizing upon that unsupported claim, the hearing officer made the following ruling:
. . . Ms. Jones reimburse Mr. Hawkins for fifteen hundred dollars ($1500.00) and I'm going to note for the record that in the 2004 tax year he would not legally have been entitled to claim the child and is not legally entitled to claim the child now, because she makes more than he does.
When Hawkins took issue with that ruling, the hearing officer allowed an automatic appeal to district court and instructed Hawkins to produce the missing evidence of the IRS penalty in district court. She also indicated that the district court would receive additional testimony from Wise.
On January 23, 2006, the appeal was heard in district court. The transcript shows that Hawkins, Jones and Wise testified. No counsel represented the parties. Jones told the court that neither she nor her mother carried C.C.H. on their 2002 tax returns, and she was unaware of the reason for the IRS assessing Hawkins with any $1,500 penalty. Jones admitted carrying C.C.H. as a dependent for 2004, but reminded the court that Hawkins had not claimed any penalty for 2004, the year in which he received a refund. Hawkins presented no evidence of the IRS penalty, the IRS letter he was directed to bring to the hearing, or any evidence regarding Jones' tax returns.
The trial court called Wise as a witness and questioned him. In his testimony, Wise acknowledged receipt of instructions from the court to examine Hawkins' actual tax returns for 2002 and 2004. He was asked to verify the calculations submitted to the IRS on those returns. Wise reviewed with the court information from his August 23, 2005 letter quoted above concerning his revisions to Hawkins' returns. Wise reported no information regarding Jones' tax returns. Wise next discussed generally the IRS child dependency regulations for dependency exemptions and tax credits. He indicated that the IRS would consider the amount of support provided by parents to a child, whether or not joint custody arrangements existed for the child, and whether the parents had voluntarily agreed to assign the dependency exemption to one another or whether the dependency exemption had been assigned by court order. When Jones specifically asked Wise on cross-examination about the earned income credit, he testified that entitlement to such credit required Hawkins to file with "head of household" status and that the "child has . . . to live the majority of the time with that particular parent."
After taking the matter under advisement, the trial court in a written ruling found that Jones was indebted to Hawkins for $5,868.00. This amount, as explained in Wise's August 23, 2005 letter, represents the refunds for 2002 and 2004 which Hawkins could have received from the IRS. The trial court ordered that Hawkins' *310 child support payments be offset by the amount of Jones' $5,868.00 debt beginning April 1, 2006, and set the monthly child support obligation at $175.35/month. The trial court also ordered that future dependency exemptions would be determined pursuant to the IRS rules and regulations. Jones appeals the trial court's judgment.

Discussion
This action was instituted as a child support enforcement proceeding under La. R.S. 46:236.1.1, et seq.[1] Accordingly, the DSS proceeded under La. R.S. 46:236.1.2 which reads, in pertinent part, as follows:
A. The department is hereby authorized to develop and implement a program of family support in FITAP cases, Title IV-E Foster Care cases, Medicaid only cases, and any other category of cases to which the state is required by federal law or regulation to provide services, designed to do the following:
(1) Enforce, collect, and distribute the support obligation owed by any person to his child or children and to his spouse or former spouse with whom the child is living if a support obligation has been established with respect to such spouse or former spouse.
* * *
(3) Establish paternity.
(4) Obtain and modify family and child support orders.
* * *
D. (1) The department, except when it is not in the best interest of the child, may without the necessity of written assignment, subrogation, tutorship proceedings, or divorce proceedings take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for the purpose of fulfilling its responsibility under this Section, in any court of competent jurisdiction, to obtain an order, judgment, or agreement of support against the responsible person in any case in which the department is providing services under this Subpart. The amount of such support shall be set only by order of the court or by the consent of the parties, but in either case the department shall be designated as payee. Additionally, the department may take direct action to modify an order or judgment of support, including actions to increase or decrease support, in any case in which the department is providing services pursuant to this Subpart. A separate and distinct cause of action in favor of the department is hereby created, and suits brought under this provision need not be ancillary to or dependent upon any other legal proceeding.
Though the action is "separate and distinct" from actions between parents to fix child support in divorce and custody proceedings, the courts have utilized the child support guidelines, La. R.S. 9:315, et seq., in fixing the amount of support in actions by the State. State ex rel. Gilbert v. Gilbert, 34,203 (La.App.2d Cir.12/20/00), 775 So.2d 1182; State ex rel. H.B. v. Blair, 40,140 (La.App.2d Cir.8/17/05), 909 So.2d 710, writ denied, 05-2392 (La.3/17/06), 925 So.2d 548.
One of the rights of an illegitimate child is a claim for support. La. C.C. art. 240; State in the Interest of Poche v. Poche, 368 So.2d 175 (La.App. 4th Cir.1979), writ denied, *311 370 So.2d 577 (La.1979); Starks v. Powell, 552 So.2d 609 (La.App. 2d Cir. 1989). Louisiana's paramount public policy of promoting the welfare of children protects a minor child's right to continuing support from his parents. La. R.S. 9:315(A); Bass v. LaPorte, 95-867 (La. App. 1st Cir.2/14/97), 691 So.2d 138; writ denied, 97-646 (La.4/25/97), 692 So.2d 1088. Child support is modified subject to the circumstances and the best interest of the child. La. C.C. art. 142; In re: J.A.B., 04-1160 (La.App. 1st Cir.9/17/04), 884 So.2d 678, writ denied, 04-2963 (La.12/14/04), 888 So.2d 848.
Initially, we note that the child support guidelines contain specific provisions for allotting the dependency tax deduction between parents. La. R.S. 9:315.18. Nevertheless, the present proceeding is a separate and distinct action in favor of DSS and not a suit between the parents. The DSS action involves only indirectly the custodial parent who, along with the child, is furnished public assistance. An income tax fight or tax dependency allotment challenge generally would not be expected to become even an ancillary matter in this setting, at least until the assisted custodial parent obtained employment. In those cases which have occurred, the DSS has "assisted" on the side of the custodial parent, unlike the present matter. State, Dept. of Social Services v. Burkett, 02-1128 (La.App. 5th Cir.4/29/03), 845 So.2d 1183; State ex rel. Dillashaw v. Brinson, 02-0896 (La.App. 1st Cir.4/2/03), 843 So.2d 1154. The injection of such tax dispute into this action transformed the previously adjudicated child support enforcement relief into a large money judgment against the custodial parent, effectively discarding the child's support.
While we do not wholly reject Hawkins' tax dependency deduction claim as representing a no cause of action, we find troubling that his claim was never made directly against Jones by naming her as a party defendant, alleging a factual basis for his alleged loss at the hands of the IRS, and praying for a money judgment against her. She nevertheless effectively intervened in her defense. More disturbing, the governmental assistance offered by DSS for the benefit of Jones and her child drastically shifted in this action. Upon Hawkins' failure to obtain an attorney and prove his tax claim, he received a court-ordered tax review by a CPA, with the DSS petitioning the court to levy the CPA's fee against Jones. Again, while we do not view Hawkins' tax claim as irrelevant, it was nevertheless incumbent upon him to pursue the claim against Jones using proper procedure, garnering his own evidence, and following the strict test of La. R.S. 9:315.18. While such claim might conceivably be allowed as ancillary to a support enforcement action, the burden of proof was on Hawkins. From our review, we find that Hawkins never met it.
The evidence contained in Wise's report quoted above stated that Hawkins could have filed "corrected" tax returns for 2002 and 2004 and realized refunds totaling $5,868.00. Jones was ordered to pay these unrealized refunds back to Hawkins by an offset against his monthly child support payments. Wise's testimony and his report, however, never explained why Hawkins was prevented from correctly filing his returns for those refunds in the first place. There is no evidence suggesting that the IRS audited Hawkins or assessed any penalty for his actual returns. The evidence of what Jones did to cause the alleged problem with the IRS is unclear.
The testimonies of both Wise and Cothern indicate that with proof of the prior court order in his favor granting him the child dependency deduction, Hawkins should not have been penalized regardless *312 of any contrary action by Jones allegedly claiming such deduction for herself. Additionally, Wise's large refund calculations for Hawkins were apparently based upon Hawkins' entitlement to the earned income credit which was never a specific focus of the prior ruling allowing Hawkins "to carry child on income tax." The prior court ruling arguably addressed only the child dependency deduction in relation to the tax exemption and not the earned income credit. Moreover, the testimony of the tax experts indicated that entitlement to the earned income credit required C.C.H. to live the majority of the time with Hawkins for him to qualify for that filing status. The evidence indicates that C.C.H. resides with Jones and that Hawkins has only a small amount of visitation with the child. How the tax exemption and earned income credit may be interrelated was not sufficiently explained by Wise, and again, how Jones' actions caused Hawkins to lose the dependency exemption and/or the earned income credit was also not adequately explained.
Our law indicates the possibility that the IRS may not acknowledge or "maintain" the dependency deduction allotted to a parent by a Louisiana court, and in such event, the other parent "who receives the benefits of the exemption for such tax year shall not be considered as having received payment of a thing not due." La. R.S. 9:315.18(C). This provision in the law confirms Hawkins' duty to prove the circumstances for the IRS denial of his tax benefits and whether such denial resulted from the IRS rules and regulations, interference by Jones in filing her tax returns, or failure by Hawkins to properly prepare his returns. Hawkins' tax preparer never testified, and from his meager participation in the hearings which resulted in this harsh penalty on Jones and her child, Hawkins demonstrated no understanding of why his filing of tax returns in 2002 and 2004 did not result in payment of the refunds calculated by Wise.

Conclusion
Accordingly, we find that the record contains no support for the ruling of the trial court in this complicated, tax-related matter. The judgment allowing the offset in favor of Hawkins, effectively ending the child support payments, is reversed. Costs of appeal are assessed to Hawkins.
REVERSED.
NOTES
[1] The action was instituted by the DSS in 1997 pursuant to former La. R.S. 46:236.1(F) to establish filiation and child support. Following 2003 revisions to the law, that section is now La. R.S. 46:236.1.2(D)(1).